CONNOR *v.* BOARD OF SUPERVISORS OF ELEC-
TIONS OF BALTIMORE COUNTY ET AL.

[No. 187, October Term, 1956.]

380

*Decided per curiam January 11, 1957.*

*Opinion filed February 15, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*A. Paul Connor, pro se.*

The Court declined to hear argument for the appellees. *Wylie L. Ritchie,* on the brief for Board of Supervisors of Elections of Baltimore County; *Francis T. Peach, Walter R.*

*Haile* and *Richard C. Murray,* on the brief for the County Commissioners of Baltimore County.

HAMMOND, J., delivered the opinion of the Court.

A. Paul Connor, a resident, taxpayer and registered voter of Baltimore County, filed a bill of complaint in the Circuit Court for that County against the Board of Supervisors of Elections to enjoin the holding of the special election for the choosing of the first County Council to serve under the recently adopted County Charter. The County Commissioners intervened by leave of court, and the Board of Supervisors of Elections and the County Commissioners both demurred to the bill. The chancellor sustained the demurrers without leave to amend and the appeal is from that action. We advanced the case for argument and affirmed the chancellor in a *per curiam* decision on January 11, 1957. We now set forth the reasons for the affirmance.

As filed, the bill sought only that the "Charter form of Government for Baltimore County and all proceedings in conjunction therewith be declared null and void" and that the Board of Supervisors of Elections be enjoined from proceeding with the election for Council members. The day after the filing of the bill, the appellant filed a "Motion to Amend Prayer", in which it was recited that the remedy originally sought was too drastic and the appellant desired to amend the bill by substituting prayers that asked the court to change certain specified Charter provisions. Appended to the bill as an exhibit were the report of the Charter Board that drew up the Charter and a copy of the Charter as adopted by the voters of the County. This exhibit, and others filed with the bill, showed that the Charter Board had certified that it had been elected by the people of the County on November 2, 1954, that the Charter had been prepared and unanimously approved by the Board, that on April 29, 1955, it had been submitted to the President of the Board of County Commissioners of Baltimore County and, finally, that it had been adopted by the voters of the County on November 6, 1956.

The bill of complaint is discursive, containing many statements of facts and allegations to which no legal significance

or effect can be attached. It is said that the shape and physical characteristics of Baltimore County are such that it is ill suited for the charter form of government; that there are no incorporated towns in the County; that the seat of the government under the Charter is Towson, which is merely a popular name for an aggregation of homes, without legal meaning; and there are many statements of opinion of the appellant as to the defects and inadequacies of the Charter.

Although below the appellant abandoned his original claim that the Charter was null and void, and the case was heard on the bill as amended, at the argument in this Court appellant told us that he desired to have his original prayer considered, as well as the amending prayers. Since the demurrer was to the bill as a whole and the chancellor seems to have considered the validity of the adoption of the Charter in passing on the issues raised by the appellant, we accede to appellant's request.

The parts of the bill that have legal pertinence and significance set forth the steps required under Art. XIA of the Constitution for the adoption of a charter form of government by a County. It is not claimed that all of these steps were not duly taken. Apart from the fact that the amending prayers in effect concede the valid existence of the Charter, the appellant's exhibits confirm that the steps required by Art. XIA were scrupulously followed. Appellant's arguments that the Charter is invalid go beyond this. Art. XIA, Sec. 1, provides that on petition of 10,000 signatures of registered voters of the County, the Board of Supervisors of Elections shall provide at the next general or congressional election for the election of a Charter Board consisting of five registered voters in the County. Nominations for members of the Charter Board are made by the County Commissioners of the County or by petition of not less than 5% of the registered voters of the County. Section 1 then goes on to say that if "* * * not more than five registered voters in any such County are so nominated their names shall not be printed on the ballot, but said * * * five in such County shall constitute said charter board from and after the date of said election." The Board is directed to prepare a charter form of government for the County within six months from the date of said election and present

it to the President of the Board of County Commissioners, who shall cause it to be published in newspapers of general circulation in the County. After publication, the Charter is to be submitted to the voters of the County at the next general or congressional election and, if adopted, "* * * the said charter from and after the thirtieth day from the date of such election shall become the law of said * * * County * * * and any public local laws inconsistent with the provisions of said charter and any former charter of said * * * County shall be thereby repealed."

The appellant says that the petition, including the signatures and oaths of the 10,000 petitioners that sought the charter form of government should have been published for the inspection of the citizens and voters of Baltimore County, that the members of the Charter Board were not duly elected because not chosen by a primary, as provided by Code, 1951, Art. 33, Sec. 56, and the voters had no choice of candidates in disregard of the right to such choice, said by the appellant to be given them by the Constitution of Maryland. There is no provision in the Constitution or the law that requires the publication of the petition looking to the adoption of the charter form of government provided for in Art. XIA, and appellant's contention on this point is without substance. The nomination of the members of the Charter Board and their election were in strict accord with the directions of Art. XIA and under the express terms of that Article. Since there were but five nominees, their names did not go on the ballot. The provisions of Art. XIA are clear and unambiguous statements in the basic instrument of government of the State, its Constitution. There is no conflict or inconsistency between them and other provisions of the Constitution. They must be accorded full weight and effect. Since they were followed to the letter in the instant case, there is no doubt that the Charter Board was duly elected and constituted. *County Commissioners v. Supervisors of Elections,* 192 Md. 196, 211.

The Charter prepared by the Charter Board and adopted by the voters became the law of Baltimore County and is entitled to the presumption of validity that is applicable to any regularly adopted law. *County Commissioners v. Supervisors*

*of Elections,* 192 Md. 196, 207, *supra.* The Charter provided in Art. II, Sec. 201, that there should be a County Council of Baltimore County composed of seven members. Art. XI, Sec. 1103, provided that the first County Council should be elected on January 23, 1957, and that nominations for candidates should be submitted to the Board of Supervisors of Elections not later than Monday, December 17, 1956, and then provided: "Such nominations may be made by: (1) petitions conforming with the requirements provided in Article 33, Section 44 of the Annotated Code of Maryland (1951 Edition), and/or (2) the State Central Committees of Baltimore County of the Democratic and Republican Parties." The Charter further provided in Art. XI, Sec. 1105, that the President of the Board of County Commissioners holding office at the effective date of the Charter should be the first County Executive and that his term shall commence the same day as the term of the first County Council. The appellant argues that the adoption of the Charter and the election of the County Council should have been done "bilobatically" instead of separately, and that the Charter is unconstitutional and invalid because in electing the first County Council the voters are deprived of the right of choice by primary elections that the law usually gives them (and that the Charter gives them in all elections for the Council after the first), and must depend either upon petition or the State Central Committees. He says that the Charter is unconstitutional and invalid for a further reason because it names the County Executive instead of providing for his election and by doing this deprives the voters of Baltimore County of a fundamental right. Appellant's first contention was answered in *County Commissioners v. Supervisors of Elections, supra,* at page 212 of 192 Md., where the election of the first Montgomery County Council, after nominations only by petition, was upheld although the mode of subsequent selection of candidates and of their election was to be identical with those for members of the General Assembly, under the terms of the Charter. The Court said: "The appellants urge that the provisions of the Charter are in conflict with the laws relating to the regular election of members of the General Assembly as to time of election, method of nomi-

nation and time for nomination. As above pointed out, the proposed election for members of the new County Council is to fill vacancies in offices newly created. There are no provisions of the general laws of the State of Maryland relating either to the nomination or the election of members of the General Assembly to fill vacancies. * * * Whatever may be the effect of the Act of 1945 upon future elections to fill the places of the members of the first County Council after the expiration of their terms, that Act has no application to the nomination and election of the first County Councilmen." The nominations for members of the Baltimore County Council were made in accordance with the provisions of the Charter and we find nothing unconstitutional or invalid in those provisions. Likewise, we see no merit or substance in appellant's contention that it was unlawful for the Charter to name the first County Executive instead of providing for his election. Apart from the question of legality, there was an election as a practical matter since the voters of Baltimore County knew that if they adopted the Charter the first County Executive would be the then President of the Board of County Commissioners and, in effect, by adopting the Charter elected the head of their local government.

Appellant, in his amended prayers for relief, asked the Equity Court to provide for a primary election for the first County Council, to make the first County Executive elective at the same time and under the same conditions as the Council, to change the name of the office to the President of the Council, to designate the seat of the County government by the number of the district in which it is located, and to set the dates for the primary and general elections. These prayers for relief require little discussion. Obviously, it is beyond the power of a court to pass or amend a law, which is what the appellant would have the Court do. Under the doctrine of the separation of powers between the executive, the legislative and judicial branches of the government, it is not the function of the courts to consider or determine whether legislation is well or ill conceived or to pass on the expediency or policy of laws. These are all political questions committed by the people in the Constitution to the Legislature, or passed on by the people

more directly by the adoption of the basic controlling instrument, as in the case before us.

The court below was right, we think, in sustaining the demurrers, without leave to amend.