COUNTY COMMISSIONERS FOR MONTGOMERY COUNTY ET AL. *v.* SUPERVISORS OF ELECTIONS OF MONTGOMERY COUNTY ET AL.

[No. 125, October Term, 1948.]

198

*Decided per curiam December 16, 1948.*

*Opinion filed January 21, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ., and EMORY H. NILES, J., of the Supreme Bench of Baltimore City, specially assigned.

*F. Barnard Welsh* for the appellants.

*Frederic P. Lee,* with whom were *C. E. Quinn* and *De-Witt S. Hyde* on the brief, for the Supervisors of Elections.

Submitted on brief by *James J. Hayden, R. E. Brown, A. H. Gardner* and *G. D. Morgan* for Charter Board and Charter Committee.

NILES, J., by special assignment, delivered the opinion of the Court.

The question presented in these proceedings is whether a County is entitled, under the "Home Rule Amendment" of the State Constitution, to adopt a Charter providing for a prompt special election of the first County Council, or whether it is required to defer such election until the next quadrennial general election for State and County officers, and then to comply with all of the requirements for a general election.

Specifically, the voters of Montgomery County on November 2, 1948 adopted a Charter in accordance with the procedure required by the Home Rule Amendment to Constitution, art. XIA. Article IX of the Charter provided that the members of the new County Council should be nominated only upon petition, to be filed within 10 days after the Charter becomes law; and that a special election should take place on January 6, 1949. The appellants, who are four of the County Commissioners whose functions will be superseded by the new County Council, both in their corporate capacity, and individually as citizens and as taxpayers, sought, in the Circuit Court for Montgomery County, an injunction against the Supervisors of Elections of Montgomery County to prohibit them from holding the special election on January 6, 1949.

The case was heard in the Circuit Court for Montgomery County by Chief Judge Woodward and Judges Prescott and Schnauffer, who, by a decree passed December 13, 1948, sustained a demurrer to the bill of complaint and denied the injunction. From that decree an appeal was taken to this Court; and in view of the public importance of the case and the nearness of the date for the proposed election, the case was advanced on the docket, and heard on December 16, 1948. On the same day, by

an order *per curiam,* the decree of the Chancellors was affirmed, for reasons to be stated in an opinion to be filed thereafter; this opinion, although filed later, is written as of that date.

There are no facts in dispute, and the appellants make no complaint that the Charter, as submitted to the voters of Montgomery County and as adopted by them, does not comply in all respects both with constitutional provisions and with statutory provisions, except for the single point that the provisions of the Charter for holding a special election on January 6, 1949 are invalid.

In all other respects they concede, and we assume for the purposes of this case, that the Charter complies with the provisions of the Home Rule Amendment, and that the powers granted to the County Council and to the other officers of the proposed County government are in strict accord with the constitutional scheme provided for in the Home Rule Amendment. Furthermore, the appellants, as County Commissioners in office at the time of the adoption, have accepted office under the new Charter, and are exercising such powers as are confided to them during the interim period between December 2, 1948 when the Charter became effective, and the date when the new County Council is to take office. It is their claim, however, that they are entitled to hold their offices as County Commissioners and as County Councilmen for a term of 4 years from the date of their election in 1948 and until successors to be elected in November 1950 shall qualify.

The appellants contend that the provisions of the Charter respecting the special election are invalid, for the following reasons:

1. That they violate the "Quadrennial Elections Amendment" or "Fewer Elections Amendment" to the Constitution, Article XVII, which provides that "all elections" shall be held every fourth year after 1926; under that provision the next general election will not be held until 1952.

2. That they violate the provisions of the same Amendment by shortening the terms of the present County Com-

missioners to a period of less than four years.

3. That they violate the "Home Rule Amendment" of the Constitution, Article XIA, and the Express Powers Act (Article 25A of the Code of Public General Laws) by assuming a power to hold an election when none is expressly given either to the voters or the government of the County.

4. That they violate Article 25A, section IA of the Code of Public General Laws, Acts of 1945, ch. 792, in that nominations and elections in the proposed special election for County Councilmen are not made as for members of the General Assembly.

To these contentions the Supervisors of Elections answer:

1. That the election of the members of the first County Council is a special election to fill vacancies in newly created offices; that the Quadrennial Elections Amendment applies only to general elections, and does not prohibit the proposed special election.

2. That whether or not the Charter shortens the terms of the present County Commissioners is not material and not an issue in this case.

3. That the holding of the contemplated special election does not violate the Home Rule Amendment, since power to hold the contemplated election is clearly implied by the Amendment itself.

4. That the method of nomination does not violate art. 25 A, sec. 1A, since there are no provisions in the general laws for filling vacancies in the membership of the General Assembly by election.

The adoption of the Montgomery County Charter on November 2, 1948 was the result of long public debate and controversy, one part of which came before the Court recently in the case of *Schneider v. Lansdale,* 191 Md. 317, 61 A. 2d 671.

The Charter recites that it is adopted by the people of Montgomery County in accordance with art. XIA of the Constitution and the general laws of Maryland. It is a complete scheme of government for the affairs of the

County, and is composed of nine Articles, relating respectively to: the County Council, the Legislative Branch, the Executive Branch, the Departments of County Government, the Merit System, Expense and Capital Budgets, Centralized Purchasing, Miscellaneous Provisions, and Transitory Provisions.

Article IX, on Transitory Provisions, is the only Article with which we are here concerned. It provides for a special election for members of the first County Council on January 6, 1949 "in order that the Charter may become operative promptly after it becomes law."

To that end petitions for the nomination of candidates for the offices of members of the first County Council shall be filed not later than the tenth day after the Charter becomes law, *i. e.*, December 12, 1948.

The same Article provides that the terms of the members of the first County Council shall commence on the Monday following their election, and that "in order to place the election of members of the County Council on the quadrennial basis" provided in the Quadrennial Elections Amendment, Article XVII, of the Maryland Constitution, they shall expire at such time as the successors elected at the next quadrennial election qualify and take office, *i. e.*, November 1950.

To provide for government during the period from December 2, 1948 until the assumption of its duties by the County Council, it is provided that the five County Commissioners in office at the time that the Charter is adopted shall hold office and exercise their present powers, and shall constitute the County Council, until the members of the first elected County Council take office.

Section 5 of the Article provides that Articles I, II and VIII establishing the County Council as the Legislative Branch of the County Government and containing miscellaneous provisions, shall take effect on December 2, 1948; whereas the provisions of Articles III to VII, including those relating to the County Council as the Executive Branch, do not become operative until the members of the first County Council take office.

The point at issue involves two Articles of the State Constitution, namely, the "Home Rule Amendment," Article XIA, adopted in 1915, and the "Quadrennial Elections Amendment" or "Fewer Elections Amendment," Article XVII, adopted in 1922. For a clear understanding of the case it is necessary to outline these constitutional provisions.

The Home Rule Amendment provides a systematic plan for establishing county government, with local legislative powers exercised by a County Council in place of the previous system of government by County Commissioners exercising no general legislative power. Montgomery is the first county of the State to adopt a charter under these provisions, although the City of Baltimore adopted a charter in 1918, and has several times amended it under other provisions not material here.

Section 1 of the Home Rule Amendment provides for the election in any County of a charter board to prepare a "charter or form of government" for such County, to be submitted to the voters at the next general election. Section 1 further provides that if a majority of the votes cast shall be in favor of adoption, "the said charter from and after the thirtieth day from the date of such election shall become the law of said * * * County, subject only to the Constitution and Public General Laws of this State, * * *."

Section 2 of the Amendment provides that the General Assembly at the first session after the adoption of the Amendment shall, by public general law, provide a grant of express powers for such Counties as might thereafter form a charter; but provides further that such express powers granted to the Counties shall not be enlarged or extended by any charter so formed.

In fulfillment of this mandate, the General Assembly adopted the "Express Powers Act," now codified as Article 25A of the Code of Public General Laws. This Act, while enumerating the granted powers in nineteen separate paragraphs, grants no power to hold elections. The only reference to elections is contained in a grant of

power to rearrange and create election districts and precincts. There is also in the Express Powers Act a restrictive clause which provides that the powers therein granted shall only be exercised to the extent that the same are not provided for by Public General Law.

Section 3 of the Home Rule Amendment provides that "Every charter so formed shall provide for an elective legislative body in which shall be vested the law-making power of said * * * county.", and that such elective body shall be known as the County Council. It further provides that all references in the Constitution and laws to the County Commissioners shall be construed to refer to the President and County Council "whenever such construction would be reasonable." The County Council is empowered to enact local laws for the County, and to repeal or amend local laws theretofore enacted by the General Assembly upon all matters covered by the "express powers."

Section 4 of the Home Rule Amendment provides that "From and after the adoption of a charter * * *, no public local law shall be enacted by the General Assembly for said * * * County on any subject covered by express powers * * *."

Section 6 of the Home Rule Amendment provides that the power theretofore conferred upon the General Assembly to prescribe the number, compensation, powers and duties of the County Commissioners, is transferred to the voters of the County, but that such powers shall be exercised only by the adoption (or amendment) of a charter.

As a result, with respect to any County adopting a charter:

1. The new charter takes effect thirty days after its adoption.

2. A County Council is to be elected.

3. The local legislative power is transferred from the General Assembly to the County Council, and the General Assembly is forbidden to enact local legislation.

4. The County Council can exercise the "express powers" enumerated in the Express Powers Act, and succeeds to the rights and obligations of the County Commissioners "whenever such construction would be reasonable."

5. The provisions of the Charter are subject to the Constitution and Public General Laws of the State.

6. All public local laws inconsistent with the Charter are repealed.

The Quadrennial Election Amendment, Article XVII, of the Constitution, adopted in 1922, provides in Sec. 1 that all State and County officers shall hold office for terms of four years, and in Sec. 2 that elections for such officers shall be held in November 1926, and every fourth year thereafter. The next such election should be held in November 1950.

Section 11 of Article XVII provides: "The purpose of this Article is to reduce the number of elections, by providing that all State and county elections shall be held only in every fourth year, and at the time now provided by law for holding congressional elections; and to bring the terms of appointive officers into harmony with the changes effected in the time of the beginning of the terms of elective officers; and the administrative and judicial officers of the State shall construe the provisions of this Article so as to effectuate that purpose * * *".

The remaining sections of the Amendment, 4—10, 12, are devoted to a detailed adjustment of the terms of elective and appointive officers in order to effect the result of having all the terms of regularly elected or appointed officers expire at appropriate times to comply with the general plan of holding elections every four years to fill their places.

Section 13 provides that in the event of any inconsistency between the provisions of the Amendment and any of the other provisions of the Constitution, the provisions of the Amendment shall prevail.

The Charter is carefully drawn to comply with these provisions for quadrennial elections after the election of the members of the first County Council.

The principal ground upon which the appellants rest their case is that the provision contained in Article IX, section 3a of the Charter providing for a special election on January 6, 1949, is in direct and inescapable conflict with both Sections 2 and 11 of Article XVII of the Constitution, which require that elections for county officers shall be held every fourth year after 1926, and that "all State and county elections shall be held only in every fourth year".

It is of course obvious that the bare words of these two provisions indicate a conflict, since a special election is an election, and the special election provided for by the Charter is not to be held four years after the last general election, at which the present County Commissioners were elected.

The appellants allege that there is no room for interpretation of these words of the Constitution, which are entirely clear, and unambiguous. They further contend that in view of the inconsistency between the provisions of the Home Rule Amendment and the provisions of the Quadrennial Elections Amendment, the latter must prevail, both under the express words of Article XVII and because that Article, as compared with the Home Rule Amendment, is the later expression of the will of the people. The governing rule is, they contend, that the Court is limited to the language of the enactment itself, and that it may not be governed by what the framers of the Amendment might have meant to say, but is of necessity controlled by what they did say. They quote from *Norris v. Mayor and City Council of Baltimore,* 172 Md. 667, at page 676, 192 A. 531, at page 535, where this Court said: "it is axiomatic that where the language of a Constitution is clear and unambiguous, there can be no resort to construction to attribute to the founders a purpose or intent not manifest in its letter."

It is clear that the Charter has now, under the Home Rule Amendment, become the law of Montgomery County, and is entitled to the presumption of validity that is applicable to any law regularly adopted. This principle is

208

too well established for any citation of authority to be needed.

If there is a conflict between the provisions of the Home Rule Amendment and the provisions of the Fewer Elections Amendment, this Court in construing the meaning of the Constitution must bear in mind that it is dealing with an instrument of government. Such an instrument must be so interpreted as to provide for the effective and continuous ordering of the public affairs of the people. One cannot view the Constitution as made up of separate and unrelated parts. The entire Constitution must be regarded as a whole. Each part must be construed, not by itself, but with reference to the whole, and no result should be reached which would be absurd or unworkable. *Manly v. State,* 7 Md. 135; *Groome v. Gwinn,* 43 Md. 572; *Johnson v. Duke,* 180 Md. 434, 440, 24 A. 2d 304. When an apparent conflict arises, it cannot be doubted but that literalism and verbalism must yield to the essential and underlying claims of the people of the State to have a reasonable and effective government.

One basic rule for the construction of the Constitution is that it be not so construed as to prevent the filling of vacancies, or to create an interregnum in office.

In *Sappington v. Scott,* 14 Md. 40, at 53, this Court said: "In framing the organic law, by which the government itself was to be kept in operation and regulated, we cannot suppose there was a deliberate intention to make provisions, which should be so construed as to produce a necessary periodical interregnum, in each one of several highly important offices."

In *Benson v. Mellor,* 152 Md. 481, at page 491, 137 A. 294, at page 298, the Court said: "The controlling, if not the sole, consideration has been that the law requires, in the public interest, that the offices be filled at all times, without interruption, * * *."

That the interpretation contended for by the appellants violates this principle is manifest from a consideration of what would be the result if it should be upheld. Sec. 1 of the Home Rule Amendment provides that the Charter

as adopted became the law of the County on December 2, 1948. Sec. 3 requires that there shall be an elective legislative body in which shall be vested the law-making power of the County. Sec. 4 provides that after the adoption of a charter no public local law shall be enacted by the General Assembly on any subject covered by express powers. And Sec. 6 provides that the powers of the General Assembly with respect to the County Commissioners are transferred to the voters of the County.

At the present time, therefore, since the County Commissioners under pre-existing law had no general power to enact local legislation, and since the General Assembly has been deprived of the power to enact local legislation, there is no body in the State competent to enact local legislation to meet the needs of Montgomery County. Nor until the election of a County Council under the provisions of the Charter can there be any lawfully constituted body with such legislative power.

The appellants allege that the interregnum of more than two years for which they contend is a matter of small moment,[1] since the existing local Code has been found adequate for the government of the County in the past. We cannot accept this contention, and believe that any construction which would result in abrogating all local legislative power for a period of more than two years would be so violent, and so out of harmony with the established doctrines of government of this State that it should be avoided if possible. How necessary local legislation is and how frequently the power is exercised is obvious from a perusal of the Acts of the regular session of the General Assembly held in 1945 at which more than 40 local statutes were enacted with reference to Montgomery County, and of the regular session of 1947 at which more than 60 such statutes were passed.

The provisions of the Home Rule Amendment indicate that it contemplates that any new charter shall go into

---

[1] In *Schneider v. Lansdale, supra,* these same appellants urged the exact opposite. In their brief at p. 17 they argued that it was "absolutely essential that there be an orderly and continuous operation of the County government."

effect promptly after its ratification by the people. The Charter Board elected to prepare a charter is required to make a report within six months of its election; the County Commissioners are required to publish that report within thirty days; the Charter is to be submitted to the voters at the next general or congressional election; and if the majority of votes is cast for the adoption of the Charter, the Charter itself becomes effective within thirty days from its adoption. It is impossible to believe that under an Amendment embodying such emphatic directions for immediate effectiveness, it was intended that a delay of as much as four years might result before the County Council could be elected and could function.

The appellants in relying upon a rigid application of the phrase "all elections" in the Quadrennial Elections Amendment neglect the fact that certain exceptions with respect to special elections have long existed both in the Constitution and in the election statutes. For example, Article IV, section 12 of the Constitution which was adopted in 1867, provides for special elections to be called by the Governor in cases of tie votes in elections for judges, clerks of court, and registers of wills. The same section provides that if the House of Delegates, after a contest, shall declare an election invalid, it shall order a new election within thirty days. Article XV, section 4, also adopted in 1867, likewise provides for special elections where any two or more candidates at any election directed by the Constitution shall receive tie votes.

· The General Assembly has construed its powers as authorizing it to provide for special elections in certain cases. Article 33, Elections, section 44 of the Code of Public General Laws, originally enacted in 1896, and last re-enacted in 1945, contains a provision excepting "cases of special election to fill vacancies in office caused by death, resignation or otherwise."

Such legislative interpretation is entitled to great consideration. *Humphreys v. Walls*, 169 Md. 292, 181 A. 735.

It could hardly be supposed, and it is not now con-

tended, that the adoption of the Fewer Elections Amendment in 1922, even though it contains the words "all elections," and in addition the words repealing inconsistent constitutional provisions and statutes, has superseded or invalidated these provisions.

It is well established in Maryland that subsidiary governmental bodies have implied authority to exercise all such powers as may be necessary or fairly implied in or incident to the enjoyment and exercise of their express powers. *Mayor and City Council of Baltimore v. Employers' Association,* 162 Md. 124, 130, 169 A. 267, 81 A. L. R. 342.

The provisions of the Home Rule Amendment are clear and express with respect to the adoption of a charter, the time at which it shall take effect, and the exercise of the legislative power within the County under the Charter. If the voters of the County have express power to adopt a charter, providing for an elective council, we believe that there can be no "reasonable or fair doubt" but that they have the implied power to carry out such authority by providing for the means and conditions under which such election shall be held. Under the well recognized doctrine of implied powers, the voters of the County have power to specify in the Charter the time and manner at which and in which these vacancies shall be filled in order that effect may be given to the Charter itself.

At the present time there is no elective County Council from Montgomery County, and the offices of the County Councilmen established by law as a result of the adoption of the Charter, are vacant. The election to be held on January 6, 1949 is not a general election in the sense of having for its purpose the regularly recurring selection of an officer after the expiration of the full term of the former officer. It is, on the contrary, an election to fill vacancies in offices newly created, and thus a special election.

Our interpretation of the Quadrennial Elections Amendment, in the light of Home Rule Amendment and

the other provisions of the Constitution, impels us to the clear conclusion that the Quadrennial Elections Amendment was designed for, and its effect is limited to, the establishment of a system to regulate general elections for the purpose of selecting officers after the expiration of the full terms of former officers. It is not designed to regulate, nor does it prohibit, such a special election as that here involved with reference to the filling of initial vacancies pursuant to a new charter adopted for the government of a County.

It is also contended by the appellants that by including the provision to hold a special election for the election of the members of the first County Council, the voters of the County have arrogated to themselves a power not granted to them, in violation of the specific restriction in the Home Rule Amendment.

But the power of the people of the County to create and adopt the form of government described in the Charter, and to elect its legislative body, does not depend on any legislative grant from the General Assembly, but is derived from Article XIA of the Constitution itself. That an election must be held for members of the County Council follows inevitably from the constitutional provision that any charter adopted shall "provide for an elective legislative body."

The appellants further contend that the provisions for nomination and election of members of the first County Council are in conflict with Article 25A, section 1A of the Code, which section was added to the Express Powers Act by Chapter 792, of the Acts of 1945. This section provides that members of the County Council in any County adopting a charter under Article XIA shall be nominated and elected "as the members of the General Assembly are or may be (nominated and) elected under the provisions of the law of the State of Maryland".

The appellants urge that the provisions of the Charter are in conflict with the laws relating to the regular election of members of the General Assembly as to time of election, method of nomination and time for nomination.

As above pointed out, the proposed election for members of the new County Council is to fill vacancies in offices newly created. There are no provisions of the general laws of the State of Maryland relating either to the nomination or the election of members of the General Assembly to fill vacancies. When a vacancy occurs in the membership of the General Assembly it is prescribed by Article III, section 13 of the Constitution that the Governor shall appoint a proper person to fill such vacancy. Since the Home Rule Amendment itself requires that the County Council be an elective body, provisions for appointment by the Governor would not be applicable. *Buchholtz v. Hill,* 178 Md. 280, 285, 13 A. 2d 348. There is therefore no provision of the law of the State of Maryland applicable to the situation presented in the case at bar. Whatever may be the effect of the Act of 1945 upon future elections to fill the places of the members of the first County Council after the expiration of their terms, that Act has no application to the nomination and election of the first County Councilmen.

With respect to the contention that the Charter unlawfully shortens the terms of the present County Commissioners, it need only be said that the Commissioners hold their offices subject to the possibility that they may be ousted under the provisions of the Home Rule Amendment providing for the adoption of a charter. *Cf. Brown v. Brooke,* 95 Md. 738, 54 A. 516. Questions as to whether their offices continue, and whether they are due their salaries after the establishment of the County Council, are not now before us, and it is therefore not necessary to make any decision or express any view upon these points. Related points were considered in *Woelfel v. State,* 177 Md. 494, 9 A. 2d 826, and *Calvert County Com'rs v. Monnett,* 164 Md. 101, 164 A. 155, 86 A. L. R. 1258.

Nowhere does the Constitution say, either in the Home Rule Amendment, or otherwise, that after the adoption of the Charter the old County Commissioners shall have the powers to be given to the County Council. On the contrary, the exact reverse is stated in section 1 of the

214

Home Rule Amendment under which the Charter becomes operative as the law of the County on the thirtieth day after its adoption.

The Charter of Montgomery County now adopted is an expression of the will of the people of that County, acting in accordance with their rights and privileges. To nullify its provisions for two years because of an apparent inconsistency between charter provisions and constitutional provisions relating to other matters would be a grave step involving serious risks to the County. We do not believe that the inconsistency is real, or that the constitutional provisions relied on apply to a special election such as the one contemplated.