698 A.2d 523

## CITY OF ANNAPOLIS

v.

## ANNE ARUNDEL COUNTY, Maryland.

No. 84, Sept. Term, 1995.

Court of Appeals of Maryland.

Aug. 25, 1997.

**2**

Argued before MURPHY, C.J.*, and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

ELDRIDGE, Judge.

The dispositive issue in this case is whether, between 1970 and 1992, Anne Arundel County unlawfully withheld state tobacco tax revenue from the City of Annapolis. Resolution of this question turns on the continuing viability of a public local law enacted by the General Assembly, Ch. 1041 of the Acts of 1945, after Anne Arundel County in 1964 adopted a home rule

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

charter pursuant to Article XI–A of the Maryland Constitution.

## I.

In 1945 the General Assembly enacted Ch. 1041 which added a new § 408A to Article 2 of the Code of Public Local Laws of Maryland (1930), title "Anne Arundel County." Section 408A provided that, whenever a new source of State revenue should be allocated to Anne Arundel County, unless the statute making the allocation specified a different division, the County should remit 1/7 of the new revenue to the City of Annapolis for whatever use the City decided, and the County should place the remaining 6/7 in "the road funds" of the other six election districts in proportion to the assessable basis of each of the six election districts.[1]

By Ch. 1 of the Acts of 1958, the General Assembly enacted a new "State Tobacco Tax Act" which, in addition to any other taxes on cigarettes, imposed a tax "on all cigarettes used, possessed or held" by any person for sale or use in Maryland. Three years later, the General Assembly enacted Ch. 321 of the Acts of 1961, codified in Maryland Code (1957, 1961

---

1. New § 408A of Article 2 of the Code of Public Local Laws, as enacted by Ch. 1041 of the Acts of 1945, provided in its entirety as follows:

"408A. Whenever any portion of any new State revenue as hereinafter defined shall be allocated to Anne Arundel County, unless the statute making the allocation shall specify a different division or use of the same, the said County shall remit one-seventh thereof to the City of Annapolis for such uses as may be decided by the Mayor, Counselor and Aldermen of said City. The remaining six-sevenths shall be placed in the road funds of the other election districts of said County excluding the Sixth Election District, and shall be divided among said other election districts in proportion to the assessable basis of each of said other election districts. This Section shall apply only to allocations of State revenues from new sources originated by any of the Acts of 1945 or any subsequent regular or special session of the General Assembly of Maryland; and shall not apply to any of such allocations now being received by said County under laws heretofore enacted prior to the 1945 Session, nor to future allocations from present sources of State revenues originated prior to the 1945 Session."

Supp.), Art. 81, § 460(a)(4), which distributed a portion of the tobacco tax revenue collected under the 1958 State Tobacco Tax Act to the counties and to the City of Baltimore. The 1961 statute specified that the distributed revenue was "to be credited into the general funds of each such political subdivision." [2]

In accordance with Ch. 321 of the Acts of 1961, the State distributed $ 34,062,655.77 of tobacco tax revenue to Anne Arundel County from 1961 until 1992. [3] Between 1961 and 1969, the County remitted 1/7 of its allotted portion of tobacco tax revenue to the City of Annapolis.

In 1964, Anne Arundel County adopted a home rule charter pursuant to Article XI–A of the Maryland Constitution. Section 718 of the Anne Arundel County Charter created a budgetary scheme which replaced the prior county district road system. Among other things, § 718 abolished the prior special district road taxes and district road funds and created a "general fund" into which most new revenue would be

---

**2.** Article 81, § 460(a)(4), was recodified without substantial change as Maryland Code (1978, 1988 Repl.Vol.), § 2–1605 of the Tax–General Article. Article 81, § 460(a)(4), provided, in pertinent part, as follows:

" **§ 460. Payment of proceeds into special fund; disbursements; local tax prohibited.**

\* \* \*

"(4) After the distributions provided for [above], the remainder shall be paid and distributed quarterly to each county and to the City of Baltimore, to be credited into the general funds of each such political subdivision. The amount to be paid to each political subdivision shall be a prorata share of the remainder, in the same ratio from time to time as the population of the political subdivision is to the population of the State. In no event, however, shall a political subdivision be paid under this distribution for any State fiscal year a sum of money less than that political subdivision received during the calendar year of 1960 as the net collection, after the deduction of administrative and collection expenses, from a cigarette tax then imposed and collected by that political subdivision."

**3.** Section 2–1605 of the Tax–General Article, formerly Art. 81, § 460(a)(4), first enacted by Ch. 321 of the Acts of 1961, was repealed by Ch. 1 of the Acts of the First Special Session 1992.

placed.[4]

On October 29, 1965, the County Council of Anne Arundel County passed and the County Executive signed Bill No. 85, which expressly repealed several sections of Article 2 of the Code of Public Local Laws, Anne Arundel County, including Ch. 1041. In addition, Bill No. 85 codified the abandonment by the County of any dedication of funds to road maintenance and repairs, and created a new mechanism under which the County Council assumed full control over the County's highways, roads, sidewalks, alleys, bridges, drains and streets. Despite the repeal of Ch. 1041, however, the County continued

---

**4.** As originally enacted as part of the Charter, § 718 provided, in pertinent part, as follows:

"Section 718. COMPOSITION AND LIMITATION UPON COUNTY FUNDS AND LEVIES; SPECIAL TAXES; BOND OBLIGATION. For the fiscal and tax year beginning July 1, 1965 and thereafter the following provisions shall provisions shall apply:

"(a) SPECIAL FUNDS; REVENUE AND RECEIPTS; APPROPRIATIONS. All revenues and receipts from utility assessments; from special services or benefit charges; from special taxes or assessments imposed upon special taxing areas for special or particular services, purposes or benefits; from funds held by the County as trustee or agent; or from bond proceeds, shall be paid into and appropriated from special funds created therefor.

"(b) GENERAL REVENUE AND RECEIPTS; APPROPRIATIONS. All other revenues and receipts of the County from taxes, grants, State revenues and other receipts shall be paid into and appropriated from the general fund which shall be the primary fund for the financing of current expenses for the conduct of County business. A tax imposed upon all assessable property or class of property in the County which exempts assessable property in an incorporated municipality subject to the provisions of Article XI–E of the State Constitution shall not be deemed or construed to be a 'special tax' for the purposes of this section and all receipts from such tax shall be paid into and appropriated from the general fund.

* * *

"(d) LEVY FOR ROADS. No tax for the purpose of raising revenues for the construction and maintenance of public roads shall be levied upon any assessable property in the County except on a Countywide basis, exclusive of incorporated municipalities subject to the provisions of Article XI–E of the State Constitution which operate and maintain their own road or street system."

In a memorandum entitled "Notes to the Proposed Home Rule Charter of Anne Arundel County," counsel to the Anne Arundel County Charter Board concluded that "subsection (b) of 718 repeals [Ch. 1041] because of the obvious inconsistency."

until 1969 to remit 1/7 of the State tobacco tax revenue which it received to the City of Annapolis.[5]

In 1994, in response to an inquiry from a member of the General Assembly, the Office of the Maryland Attorney General issued a memorandum which concluded that Anne Arundel County's attempted repeal of Ch. 1041 was invalid.[6]

On December 1, 1994, the City of Annapolis commenced the present action by filing in the Circuit Court for Anne Arundel County a complaint for a writ of mandamus against the

---

5. It is not entirely clear from the record why the County continued to remit 1/7 of the tobacco taxes to the City between 1965 and 1969. In its brief and at oral argument, the County explained that during this period, Anne Arundel County was implementing a "property tax rate 'differential' for property owners" in the City of Annapolis who would be taxed at a lower rate "for services provided by the City which otherwise would be provided by the County." At the same time, the County was planning to eliminate the 1/7 remittance to the City. The County maintains that "the fact that the property tax rate differential was 'phased in' just prior to the time that payments to the City of tobacco tax revenues were being 'phased out' was not a product of chance."

6. Assistant Attorney General Richard E. Israel, who signed the memorandum, adopted the position that, "[a]lthough Anne Arundel County became a charter home rule county in 1965 and repealed the remittance requirement later that year, it is my view that the county lacked the authority to repeal this provision of law.". He reasoned, in pertinent part, as follows:

"In 1965, as at the present time, the Express Powers Act conferred on the charter counties broad power to enact ordinances concerning their roads and sidewalks. [Citations omitted]. However, this Act has never conferred on such counties any general revenue raising power. [Citations omitted]. Moreover, this Act, as it existed in 1965 and as it exists today, contains no provision which can reasonably be construed to give the charter counties the power to enact local laws repealing State laws providing for the distribution of new State revenue in a particular county.

"Because the State law on distributing new State revenue in Anne Arundel County was codified in a chapter on roads, streets and sidewalks in the 1957 Anne Arundel County Code, it may be that the County Council thought it was acting under its broad power over roads and sidewalks. However, as this State law concerned the distribution of State revenue and there is no provision of the Express Powers Act which can be construed to authorize the County to repeal this law, the 1965 ordinance was without legal effect to the extent that it purported to repeal this law."

County. The City alleged that the County failed to remit to the City 1/7 of the state tobacco tax revenue that it received between 1970 and 1992. In its complaint, the City requested "that a Writ of Mandamus be issued by this Court commanding that Anne Arundel County, Maryland pay over to the City of Annapolis the amount of $9,242,402.14," consisting of unremitted State tobacco tax revenues in the amount of $3,938,-733.14 and interest, at the rate of 6%, in the amount of $5,303,669.00. In response, the County filed a motion to dismiss, raising several grounds as to why the action would not properly lie. The County did not, however, raise the defenses of limitations or laches.

Thereafter, the Circuit Court for Anne Arundel County dismissed the City's complaint on the ground of laches, even though the County had not raised that defense.[7] The circuit court stated that, because the City had "slept upon its rights," laches "serves as a defense to this action." The court reasoned that "[t]wenty-five (25) years have passed since the time this action arose" and that "a writ of mandamus would cause grave economic hardship to the County...." Although it discussed the question of whether the County properly exercised its home rule powers when it repealed Ch. 1041, the circuit court did not resolve this matter.

The City of Annapolis filed a timely notice of appeal. Prior to briefing and argument in the Court of Special Appeals, the City filed in this Court a petition for a writ of certiorari which we granted. *City of Annapolis v. Anne Arundel* County, 339 Md. 739, 664 A.2d 935 (1995).

## II.

The City argues that the circuit court's dismissal on the ground of laches was erroneous for several reasons. Specifi-

---

7. This Court has held that a circuit court may, in an action for mandamus, "refuse to grant relief to a complainant, who ... appears to have been guilty of laches, although that defense was not interposed by the defendant." *Ipes v. Board of Fire Commissioners,* 224 Md. 180, 183–184, 167 A.2d 337, 339 (1961).

cally, the City maintains that (1) the defenses of laches or limitations are inapplicable under the circumstances of the case,[8] (2) assuming that the defenses of laches or limitations are applicable, the twelve-year statute of limitations for specialties applies,[9] and (3) the circuit court improperly raised the issue of laches *sua sponte* without an adequate factual basis upon which to dismiss the City's complaint.[10]

On the merits, the City argues that the County's attempted repeal of Ch. 1041 exceeded the County's home rule authority under Article XI-A of the Constitution and the Express Powers Act, Code (1957, 1996 Repl.Vol.), Art. 25A. Characterizing Ch. 1041 as "an act of the General Assembly exercising its plenary taxing authority[ ]" (City's brief at 16), the City states "that the Express Powers Act has never provided to chartered counties a general taxing power" (*id.* at 13), citing *Eastern Diversified v. Montgomery County*, 319 Md. 45, 50, 570 A.2d 850, 852 (1990). The City insists that, because Ch. 1041 is a statute exercising "taxing authority," Anne Arundel

---

**8.** The City contends that the defenses of laches or limitations are not applicable "when the plaintiff is a governmental entity asserting an action that arises from the exercise of a governmental function." According to the City, collecting and distributing tax revenues constitutes a "govern-mental function" that is no less applicable when one governmental agency asserts a claim against another. The City states that the collection and receipt of tax revenues to increase "the City's general fund is solely for the public benefit and common good of all the residents of Annapolis, with no 'profit' inuring to the City."

**9.** Relying on *Mattare v. Cunningham*, 148 Md. 309, 129 A. 654 (1925), the City argues that the 12 year statute of limitations for specialties under Code (1974, 1995 Repl.Vol.), § 5–102(6) of the Courts and Judicial Proceedings Article, applies when a statute creates an affirmative duty or obligation. According to the City, Chapter 1041 creates an affirmative duty "on the County to remit to the City one-seventh of the State tobacco taxes allocated to the County...."

**10.** In the City's view,

"[i]t is premature to dismiss the complaint on the ground[ ] of laches without exploring the factual issues underlying the accrual of the cause of action, *i.e.*, when the City discovered the wrong advice; whether the delay was unreasonable; what prejudice the County can prove; and how the applicable period of limitations, if any, affects the nature of any theoretical prejudice suffered by the defendant."

County had no authority to repeal such a local tax statute enacted by the General Assembly. The City claims that it is entitled to 1/7 of the state tobacco tax revenue received by the County between 1970 and 1992.

The County, on the other hand, argues that the circuit court properly dismissed the City's complaint on the ground of laches. The County contends that, if the pleadings show both lapse of time and prejudice, an action for mandamus can be dismissed *sua sponte* on the ground of laches. According to the County, both of these factors were shown by the pleadings in this case. The County further argues that laches applies where, as in this case, two political subdivisions are engaging "in a tug-of-war over the proceeds from a particular excise tax...." (County's brief at 38). Finally, the County asserts that the twelve-year statute of limitations for specialties has no application in "a suit ... arising from the duty ... to refund tax payments...."

The County also rejects the City's position on the merits. The County characterizes Ch. 1041 as a "budgetary" law within the purview of charter government, and argues that it had the power under Article XI–A of the Maryland Constitution to repeal such a local budgetary provision. Alternatively, the County argues that, even if it lacked authority to repeal Ch. 1041 of the Acts of 1945, the 1945 statute did not require that 1/7 of the state tobacco tax revenue be given to the City. The County points out that Ch. 1041 was applicable only when a state statute did not "specify a different division." The County contends that Ch. 321 of the Acts of 1961, distributing some of the state tobacco tax revenues to the counties, did "specify a different division" by providing that the money should be "credited into the general funds" of the counties.

### III.

For the reasons set forth below, we agree with the County that Ch. 1041 of the Acts of 1945 was lawfully repealed. In light of our resolution of this issue, we need not and do not reach the circuit court's holding or the parties' arguments

regarding laches and limitations.[11]   We also do not reach the County's alternative statutory interpretation argument.

### A.

Under the explicit language of Art. XI–A, § 3, of the Maryland Constitution, a chartered county has "the power to repeal or amend local laws of said . . . County enacted by the General Assembly, upon all matters covered by the express powers granted" to that county.  *See, e.g., Ritchmount Partnership v. Board,* 283 Md. 48, 57, 388 A.2d 523, 529–530 (1978). It is undisputed that Ch. 1041 of the Acts of 1945 was a local law, applicable only to Anne Arundel County.

■ The City correctly argues that the Express Powers Act, Code (1957, 1996 Repl.Vol.), Art. 25A, which is the principal enactment setting forth the powers of chartered counties, does not grant a general taxing authority to the counties, and, with regard to the imposition of taxes, expressly grants only the authority to impose property taxes.   Art. 25A, § 5(O).   *See, e.g., Eastern Diversified v. Montgomery County, supra,* 319 Md. at 50, 570 A.2d at 852; *Mont. Co. Bd. of Realtors v. Mont. Co.,* 287 Md. 101, 106–107, 411 A.2d 97, 100 (1980); *Mont. Co. v. Md. Soft Drink Ass'n,* 281 Md. 116, 128–130, 377 A.2d 486, 493 (1977).   *See also Controller v. Pleasure Cove,* 334 Md. 450, 463–464, 639 A.2d 685, 692 (1994).   Moreover, the General Assembly has not in any other statute granted broad general taxing power to Anne Arundel County. *Cf. Waters v. Montgomery County,* 337 Md. 15, 19, 650 A.2d 712, 713 (1994); *Mont. Co. v. Md. Soft Drink Ass'n, supra,* 281 Md. at 129–131, 377 A.2d at 493–494.

---

11. Although the circuit court did not decide whether Ch. 1041 was validly repealed, the County, "as appellee, is entitled to seek an affirmance of the circuit court's . . . decision on any ground adequately shown by the record," *Insurance Commissioner v. Equitable,* 339 Md. 596, 612 n. 8, 664 A.2d 862, 870 n. 8 (1995), and cases there cited. *See also Jenkins v. Karlton,* 329 Md. 510, 530, 620 A.2d 894, 904 (1993). Moreover, both the City and County before this Court have treated the validity of the county's repeal of Ch. 1041 as the principal issue in the case.

The next part of the City's argument, however, cannot be sustained. Ch. 1041 was not a tax statute or a revenue raising statute or "an act of the General Assembly exercising its plenary taxing authority" (City's brief at 16). Ch. 1041 neither imposed nor authorized any tax or fee whatsoever. Not a penny came to the state or county governments as a result of Ch. 1041.

The tax statute pertinent to this controversy was Ch. 1 of the Acts of 1958, imposing a tax on cigarettes held for sale. A portion of the revenue from this tax was distributed to the counties in accordance with former § 2–1605 of the Tax General Article, to be budgeted or appropriated by each county in accordance with the law regulating appropriations in each county. Anne Arundel County at no time attempted to repeal or amend Ch. 1 of the Acts of 1958 or former § 2–1605 of the Tax General Article.

Ch. 1041 of the Acts of 1945 was a local law regulating Anne Arundel County's appropriations of new state revenue which the County might receive, when the state law allocating the new state revenue was silent regarding the matter. Ch. 1041 was simply a local law regulating appropriations; it was plainly not a tax law.

The City of Annapolis contends, however, that a charter county's lack of authority under the Express Powers Act, Code (1957, 1996 Repl.Vol.), Art. 25A, to impose taxes other than property taxes, encompasses the appropriation of all revenues other than property tax revenues. The City would extend the principle that most charter counties do not have general taxing authority to include general appropriation authority. The crux of the City's argument is as follows (City's brief at 14–15):

> "The sovereign entity possessing the power to levy taxes on a particular subject has implicit authority to allocate and distribute for the common good the tax revenues collected. Such authority to apportion is necessarily incidental to the taxing power itself. It follows that because the General Assembly has the exclusive authority to levy and collect

general taxes, it also has the exclusive authority to allocate general tax revenues such as those collected pursuant to Chapter 1041.

"Similarly, Anne Arundel County possessed in 1965 the authority to allocate the property taxes collected under the provisions of Section 5(O) of the Express Powers Act. . . . It did not, however, have the authority to allocate general tax revenues. . . ."

The City's theory wholly fails to distinguish between tax laws on the one hand and appropriation laws or laws regulating appropriations on the other. Furthermore, it overlooks our cases holding that counties are authorized generally to appropriate revenues for county governmental purposes.

While in some circumstances a constitutional or other legal restriction with regard to tax laws may also be applied to appropriation laws and vice versa, and while tax provisions and appropriation provisions are sometimes contained in the same statute, nevertheless a tax law and an appropriation law are not the same. One raises revenue and the other authorizes the disbursement of funds. *See generally, e.g., Baltimore County C.A.U.T. v. Baltimore County*, 321 Md. 184, 582 A.2d 510 (1990); *Kelly v. Marylanders For Sports Sanity*, 310 Md. 437, 530 A.2d 245 (1987); *Bayne v. Secretary of State*, 283 Md. 560, 569–570, 392 A.2d 67, 72 (1978); *Panitz v. Comptroller*, 247 Md. 501, 232 A.2d 891 (1967); *McKeldin v. Steedman*, 203 Md. 89, 98 A.2d 561 (1953); *Dorsey v. Petrott*, 178 Md. 230, 13 A.2d 630 (1940). The Maryland Constitution itself draws a distinction between tax laws and appropriation laws, although in certain instances it requires that an appropriation law also contain a tax provision. *See, e.g., Article III*, §§ 32, 34, 51 and 52.

The Express Powers Act, Code (1957, 1996 Repl.Vol.), Art. 25A, also reflects a clear difference between tax laws and appropriation laws. Section 5(O) of the Act expressly authorizes charter counties to impose property taxes, but the Act does not authorize other types of taxes. No similar distinction is made or implied in the statute between different types of

appropriation laws. The principle set forth in our previously cited cases, that under the Express Powers Act charter counties do not have authority generally to impose taxes, has never been applied to appropriation laws.

Moreover, this Court in *Schneider v. Lansdale,* 191 Md. 317, 323, 327, 61 A.2d 671, 673, 675 (1948), held that "the making of budgets and the appropriation of money for county expenses, debt, service, etc." is a power traditionally belonging to all counties, including charter counties, and that the purpose of Article XI–A of the Constitution "was not to restrict county authorities in these duties long exercised by them." *See also City of Bowie v. County Comm'rs.,* 258 Md. 454, 465, 267 A.2d 172, 178 (1970); *Scull v. Montgomery Citizens,* 249 Md. 271, 274, 239 A.2d 92, 93–94 (1968).

Under the Express Powers Act and other laws, charter counties have a multitude of government functions to perform, virtually all of which require the expenditure of significant sums of money. If, as the City argues, charter counties did not have the authority to appropriate revenues other than property tax revenues, they would be seriously hampered in carrying out their functions. *See, e.g., Co. Com'rs v. Supervisors of Elec.,* 192 Md. 196, 211, 63 A.2d 735, 742 (1949) (charter counties "have implied authority to exercise all such powers as may be necessary or fairly implied in or incident to the enjoyment and exercise of their express powers"). The City's argument is inconsistent with logic as well as with this Court's prior opinions.

### B.

Our rejection of the City's argument, however, does not answer the question of whether Anne Arundel County validly repealed Ch. 1041 of the Acts of 1945.

As previously indicated, under Article XI–A, § 3, of the Maryland Constitution, a charter county's power to repeal a public local law of the county enacted by the General Assembly is limited to laws upon "matters covered by the express powers granted as above provided. . . ." The concomitant

prohibition upon the General Assembly's authority to enact a public local law for a charter county, set forth in Article XI–A, § 4, of the Constitution, is similarly limited to a public local law "on any subject covered by the express powers granted as above provided."

■ The general authority of charter counties to budget and appropriate funds is not expressly granted by the Express Powers Act or by any other enactment of the General Assembly. Under our cases, budget bills and appropriation laws by charter counties "are none of them 'legislation' as the word is used in [Article XI–A, § 3]." *Schneider v. Lansdale, supra,* 191 Md. at 328, 61 A.2d at 676. *See Scull v. Montgomery Citizens, supra,* 249 Md. at 274, 239 A.2d at 93–94. Instead of constituting an express power of charter counties to enact legislation, within the meaning of Article XI–A, §§ 3 and 4, the authority to budget and appropriate revenue is implicit in Article XI–A and is an inherent power of all Maryland counties. *Schneider v. Lansdale, supra.*

■ Since the authority to enact budgets and appropriate funds is not an "express power" of charter counties within the meaning of Article XI–A, §§ 3 and 4, of the Constitution, it follows that charter counties are not authorized by § 3 to repeal local laws enacted by the General Assembly regulating appropriations, and that the General Assembly is not precluded by § 4 from enacting such a local law for a charter county. In fact, the General Assembly, subsequent to Anne Arundel County's adoption of a charter, has enacted local laws regulating the appropriation by Anne Arundel County of tax revenues authorized by the General Assembly. *See, e.g.,* Ch. 494 of the Acts of 1977; Code (1957, 1996 Repl.Vol.), Art. 24, § 9–602(b).

Nevertheless, § 3 of Article XI–A is not the sole source of authority for a charter county to repeal a public local law enacted by the General Assembly. Section 1 of Article XI–A provides that, upon the adoption of a home rule charter, "any public local laws inconsistent with the provisions of said charter ... shall be thereby repealed." *See Co. Com'rs v. Super-*

*visors of Elec., supra,* 192 Md. at 206, 63 A.2d at 739 ("All public local laws inconsistent with the Charter are repealed").

Furthermore, § 1 of Article XI–A authorizes charter provisions concerning the organization and structure of the county government including the method or system for making governmental decisions. *See Ritchmount Partnership v. Board, supra,* 283 Md. at 58, 64, 388 A.2d at 530, 533 ("There are, however, certain powers implicit in Article XI–A. . . . These powers necessarily proceed from § 1 of the Home Rule Amendment and have as their object the initial organization and formation of charter government in the counties. * * * We hold therefore that Article XI–A, § 1 conferred upon the citizens of Anne Arundel County the right to reserve unto themselves by express charter provision the power to refer legislation enacted by the Anne Arundel County Council"). *See also Bd. of Election Laws v. Talbot County,* 316 Md. 332, 347–348, 558 A.2d 724, 731–732 (1989); *Griffith v. Wakefield,* 298 Md. 381, 385, 470 A.2d 345, 347 (1984); *Cheeks v. Cedlair Corp.,* 287 Md. 595, 607–608, 415 A.2d 255, 261–262 (1980).

This Court has taken the position that the method or system for budgeting and appropriating revenues set forth in a county's charter, including the executive budget system in effect in several counties, constitutes proper charter material under Article XI–A, § 1. The budgetary and appropriation system "is a fundamental aspect of the form and structure of" a home rule county's government. *Board v. Smallwood,* 327 Md. 220, 241, 608 A.2d 1222, 1232 (1992).

■ Consequently, a public local budgetary law of a county, which is inconsistent with the basic budgetary and appropriation system set forth in a later home rule charter for that county, would, under Art. XI–A, § 1, be repealed by the adoption of the charter. A subsequent ordinance enacted by the county council expressly repealing the earlier public local law would simply constitute proper "housekeeping legislation," removing an obsolete and previously-repealed provision from the code.

## C.

■ Ch. 1041 of the Acts of 1945 was inconsistent with the subsequently adopted charter of Anne Arundel county and thus was validly repealed by the charter. Ch. 1041 was not like other enactments by the General Assembly simply directing Anne Arundel County to appropriate specific revenues for certain purposes.[12] Instead, Ch. 1041 regulated appropriations of any future undesignated new state revenue in a manner totally inconsistent with the budget and appropriation system of the 1964 Anne Arundel County charter. Appropriations under Ch. 1041 were to be in accordance with the precharter division of the county into seven election districts, with the city of Annapolis being one of those districts and thus receiving 1/7 of the funds. Outside of Annapolis, the money was to be placed in the road funds of each other election district.

As previously discussed, the charter abolished the election-district and road-fund method of appropriating revenue. Under § 718(b) of the charter, revenues "from taxes, grants, State revenues and other receipts" are to be paid into a general fund. Appropriations from the general fund are to be in accordance with the executive budget system mandated by the county charter.

As the method of appropriating revenue received from the State under Ch. 1041 was inconsistent with the budget and appropriation system under the Anne Arundel County charter, Ch. 1041 was repealed by that charter. Thus, the City of Annapolis was not entitled to mandamus relief based upon Ch. 1041.

---

12. *Compare* Code (1984, 1991 Repl.Vol., 1996 Supp.), § 2–404(c) of the Family Law Article, directing that Anne Arundel County apply the proceeds from a particular license fee "to promote or fund domestic violence programs;" Code (1957, 1996 Repl.Vol.), Art. 24, § 9–602(b), requiring that revenues from specified taxes collected by Anne Arundel County within the City of Annapolis "shall be allocated and distributed in equal amounts to the City of Annapolis and to Anne Arundel County."

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. PETITIONER TO PAY COSTS.*