**Gen. 95]** 95

**COUNTIES**

**ELECTIONS – CHARTER HOME RULE COUNTIES – COMMISSIONER COUNTIES – FEWER ELECTIONS AMENDMENT – APPLICATION OF FEWER ELECTIONS AMENDMENT TO CECIL COUNTY GOVERNING BODY IF COUNTY ADOPTS CHARTER HOME RULE**

April 20, 2010

*Ms. Joyce Bowlsbey*
*Chairman, Cecil County Charter Board*

On behalf of the Cecil County Charter Board, you have requested our opinion concerning the terms of office of a County Executive and members of a County Council that would be created by a prospective charter. The Charter Board's questions each pertain to the extent to which Article XVII of the Maryland Constitution, known as the Quadrennial Elections Article or Fewer Elections Amendment, would constrain the scheduling of elections under a charter. In particular, the Charter Board is interested in the answers to the following questions:

1 – May the staggered terms of office that now apply to the Cecil County Commissioners also be applied to members of a Cecil County Council upon adoption of a charter form of government?

2 – Alternatively, may the new charter dispense with staggered terms of office for County Council members?

3 – May a Cecil County charter provide for the election of a County Executive in 2012 and every four years thereafter?

4 – If the State Constitution would not permit off-year elections of a County Executive, may a charter provide for the initial election of a County Executive in 2012 as a transitional measure, a subsequent election in 2014, and future elections every four years thereafter?

For the reasons set forth below,[1] it is our opinion that:

1 – A Cecil County charter may provide for staggered terms for members of a County Council.

2 – On the other hand, a County charter may supplant the current local law and dispense with staggered terms for members of a County Council.

3 – A Cecil County charter may provide for the election of a County Executive in 2012 and every four years thereafter.

4 – Alternatively, a County charter may provide for the initial election of a County Executive in 2012, a subsequent election in 2014, and future elections every four years thereafter.

## I

## Background

Cecil County is currently governed by a five-member Board of County Commissioners. Public Local Laws of Cecil County ("PLL"), §15-1. The County Commissioners are each elected at large, although each Commissioner is required to reside in a different district. PLL §15-2.A and B. The terms of the five Commissioners are staggered – two Commissioners are elected in the year of the presidential election, while three are elected in the year of the gubernatorial election. PLL §15-2.D.

The staggered terms of the Commissioners are permitted by an exception to the general rule of Article XVII of the State Constitution. The Fewer Elections Amendment generally requires that all State and county officers be elected every four years as part of the gubernatorial election. Maryland Constitution, Article XVII, §2. However, there is an exception in the Constitution for Cecil County:

---

[1] In compliance with our policies concerning opinion requests from local governments, you have provided the analysis of the Charter Board's counsel in two letters. Letter of Joyce Bowlsbey to Attorney General Douglas F. Gansler (January 10, 2010); Letter of Victor K. Tervala, Esquire, to Assistant Attorney General Robert N. McDonald (April 5, 2010). We have reviewed the information you have provided. We agree with the conclusions of your counsel and elaborate in this opinion on the reasons why.

Sections 1, 2, 3, and 5 of [the Fewer Elections Amendment] do not apply or refer to ... the Board of County Commissioners for Cecil County.

Maryland Constitution, Article XVII, §7(2). This exception was passed by the Legislature in 1999 and ratified by the voters in the 2000 election. Chapter 119, Laws of Maryland 1999. Upon ratification, companion legislation creating staggered terms for the Commissioners became effective. Chapter 380, Laws of Maryland 1999, *later amended by* Chapter 95, Laws of Maryland 2002, *and codified in* PLL §15-2.D.

## II

## Analysis

Two of the Charter Board's questions concern election of the members of a prospective County Council under a new charter; two questions concern election of a prospective County Executive.

### A.    *County Council*

The Charter Board has asked whether the staggered terms that currently apply to the Cecil County Commissioners may be applied to the members of a new County Council created under a charter. This question is readily answered by reference to a provision of the Maryland Constitution that concerns the adoption of home rule charters by counties. That section provides, in relevant part:

Every charter so formed shall provide for an elective legislative body in which shall be vested the law-making power of said ... County. Such legislative body ... in any county shall be known as the County Council of the County. The chief executive officer, if any such charter shall provide for the election of such executive officer, or the presiding officer of said legislative body, if such charter shall not provide for the election of a chief executive officer, shall be known ... as the President or Chairman of the County Council of the County, and *all references in the Constitution and laws of this State to ... the County Commissioners of the Counties, shall*

> *be construed to refer to ... the President or Chairman and County Council herein provided for whenever such construction would be reasonable....*

Maryland Constitution, Article XI-A, §3 (emphasis added).

Under this section, the reference to the County Commissioners of Cecil County in Article XVII, §7(2) – the exception to the Fewer Elections Amendment – would be construed to apply to a Cecil County Council created by a new charter, if such a construction would be reasonable. In our view, it would be reasonable to construe this exception, which the General Assembly and the voters of the State have authorized for the current governing body of the County, to apply to the new governing body created when the voters adopt charter home rule. Nothing in the legislative history of the exception suggests otherwise.

The Charter Board has also asked whether a new charter could dispense with staggered terms. The Cecil County exception in the Fewer Elections Amendment of the State Constitution authorizes, but does not mandate, the election of the County governing body on a staggered schedule. The current staggered terms for County Commissioners are set forth in a public local law that was enacted by the General Assembly coincident with the constitutional exception. However, given the lack of any public general law governing the terms of Cecil County's governing body, the proposed charter may deviate from the current local law. Specification of the terms of the local governing body clearly relate to the "form and structure" of local government and are thus appropriately part of a charter. *See Save Our Streets v. Mitchell*, 357 Md. 237, 248, 743 A.2d 748 (2000); *Cheeks v. Cedlair Corp.*, 287 Md. 595, 606-7, 415 A.2d 255 (1980). Accordingly, a new charter could change the staggering of terms, or eliminate it altogether.[2]

## B.    County Executive

The Charter Board has asked whether the exception to the Fewer Elections Amendment for the Cecil County Commissioners

---

[2] If the voters of Cecil County were to adopt charter home rule, the County Council could formally repeal the inconsistent public local law provisions under authority derived directly from Article XI-A of the State Constitution. *See City of Annapolis v. Anne Arundel County*, 347 Md. 1, 15, 698 A.2d 523 (1997).

would extend to a County Executive created under a new charter. More particularly, the Charter Board wishes to know whether the charter could provide for the County Executive to be elected in presidential election years – *i.e.*, 2012, and every four years thereafter. As indicated in the previous section, under Article XI-A, §3, of the State Constitution, references to County Commissioners in the State Constitution are to be construed to refer to a chief executive officer of a county under a charter, as well as to a county council, if such a construction would be reasonable. In our view, such a construction would be reasonable for the same reasons set forth above with respect to the prospective County Council.

In the alternative, the Charter Board asks whether a charter may provide for the initial election of a County Executive in 2012 (presidential election year) as a transitional measure, a subsequent election in 2014 (gubernatorial election year), and future elections every four years thereafter. Even if our conclusion above is incorrect and a County Executive would be subject to the Fewer Elections Amendment, the charter may still provide for this scenario. The charter, in effect, would provide for a special election with respect to the County Executive's initial term. The Court of Appeals has held that a charter may provide for such an initial special election as part of the transition to charter home rule. *See County Commissioners for Montgomery County v. Supervisors of Elections*, 192 Md. 196, 63 A.2d 735 (1949) (new Montgomery County charter could provide for an initial special election for the new County Council in an off-year shortly after adoption of the charter and subsequent regular elections in the years specified by Article XVII of the State Constitution).

## III

### Conclusion

In sum, it is our opinion that:

1 – A Cecil County charter may provide for staggered terms for members of a County Council.

2 – On the other hand, a County charter may supplant the current local law and dispense with staggered terms for members of a County Council.

3 – A Cecil County charter may provide for the election of a County Executive in 2012 and every four years thereafter.

4 – Alternatively, a County charter may provide for the initial election of a County Executive in 2012, a subsequent election in 2014, and future elections every four years thereafter.

Douglas F. Gansler
*Attorney General*

Robert N. McDonald
*Chief Counsel*
 *Opinions and Advice\**

\*Assistant Attorney General William R. Varga contributed significantly to the preparation of this opinion.