654 A.2d 1303

**PRINCE GEORGE'S COUNTY, Maryland et al.**

v.

**BOARD OF SUPERVISORS OF ELECTIONS OF PRINCE GEORGE'S COUNTY, Maryland.**

No. 18, Sept. Term, 1994.

Court of Appeals of Maryland.

June 7, 1994.

Opinion March 7, 1995.

**498**

Timothy F. Maloney (Camus and Maloney, all on brief), Riverdale, Michael O. Connaughton, Deputy County Atty. (Michael P. Whalen, County Atty., Kathleen F. Costello, Associate County Atty., all on brief), Upper Marlboro, for appellant.

Ronald Willoner, (Stephen F. Shea, Willoner, Calabrese, & Rosen, P.A., all on brief), College Park, Erik H. Nyce, Upper Marlboro, on brief, for appellee.

Richard E. Israel, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief).  Richard E. Israel, Annapolis, and J. Joseph Curran, Jr., Baltimore, for amicus curiae appellant.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

## ORDER

In this declaratory judgment action, the Circuit Court for Prince George's County, by order and opinion of April 7, 1994,

declared that section 309 of the Prince George's County Charter, as amended by CB–78–1990, ratified November 9, 1990, was "invalid and unenforceable." The circuit court also declared that "[t]he old charter provision," *i.e.,* section 309 as it read prior the 1990 amendment, "providing for the appointment of council members [to fill vacancies during a term] was invalid."

An appeal and cross-appeal were taken from the circuit court's declaratory judgment, and on April 14, 1994, this Court issued a writ of certiorari 334 Md. 468, 639 A.2d 695. After considering the parties' briefs and oral arguments presented on June 6, 1994, a majority of this Court has concluded, on grounds somewhat different from those set forth by the circuit court, that section 309 of the Prince George's County Charter, as amended by CB–78–1990, is invalid. A majority of this Court has further concluded that those portions of section 309 of the Prince George's County Charter, as they read prior to amendment by CB–78–1990, providing for the appointment of persons to fill County Council vacancies occurring during a term, are valid and are presently in effect. *See Shell Oil v. Supervisor,* 276 Md. 36, 48–49, 343 A.2d 521, 528 (1975).

For reasons to be stated in an opinion later to be filed, it is this 7th day of June, 1994,

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that the part of the judgment of the Circuit Court for Prince George's County declaring section 309 of the Prince George's County Charter, as amended by CB–78–1990, to be invalid and unenforceable, is affirmed; and it is further

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that the part of the judgment of the Circuit Court for Prince George's County declaring section 309 of the Prince George's County Charter, as it read prior to amendment by CB–78–1990, to be invalid, is reversed; and it is further

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that those portions of section 309

of the Prince George's County Charter, as they read prior to the purported amendment by CB–78–1990, providing for the appointment of persons to fill County Council vacancies occurring during a term, are hereby declared to be valid and operative at this time. *See* Maryland Rule 8–604(e).

Costs to be paid by Prince George's County. Mandate to issue forthwith.

ELDRIDGE, Judge.

The facts of this case are not in dispute. On July 3, 1990, the Prince George's County Council proposed amendment CB–78–1990 to the Prince George's County Charter. In November of the same year, at the general election, the voters of Prince George's County ratified amendment CB–78–1990. The amendment modified § 309 of the Prince George's County Charter which related to filling interim vacancies on the Prince George's County Council. Prior to the 1990 amendment, § 309 had provided that interim vacancies arising during a normal four-year term should be filled by appointment unless a vacancy arose during the first two years of the term, in which event it should be filled by a special election.[1] After

---

1. Former Prince George's County Charter § 309 read as follows:

"A vacancy in the Council shall exist upon the death or resignation of a Councilman, or upon forfeiture of office by a Councilman. When a vacancy has occurred, a majority of the remaining members of the Council shall appoint a person to fill the vacancy within thirty days. If such appointee is to succeed a member of a political party, he shall be selected from a list of three names submitted to the Council by the Central Committee of the party to which the former member of the Council belonged. If the Council has not acted within thirty calendar days, the County Executive shall appoint a person to fill the vacancy within ten calendar days thereafter. If a person having held the vacant position was a member of a political party at the time of his election, the person appointed by the County Executive shall be selected from the same list that the Central Committee of that party has previously submitted to the Council. An appointee shall serve for the unexpired term of his predecessor. Any member appointed to fill a vacancy shall meet the same qualifications and residence requirements as the previous members; provided that when permitted by the Constitution of the State, the Council shall provide by law for the

the 1990 amendment, § 309 provided that county council vacancies should be filled by special elections unless they occurred within 90 days of a regularly scheduled election.[2]

By a letter dated January 17, 1991, the Prince George's County Board of Supervisors of Elections [3] advised the Prince George's County Attorney's Office that it intended to refuse to participate in a special election if a vacancy occurred because it believed that the 1990 amendment was invalid. The Election Board expressed the view that amended § 309 1) violated the Quadrennial Elections Amendment of the Maryland Constitution, Article XVII, which provides that all state and county elections are to take place every four years on the date for congressional elections; [4] 2) violated Articles I and III of the Maryland Constitution, which, according to the Board,

conduct of special elections to fill vacancies on the Council that occur during the first two years of a term."

**2.** Amendment CB–78–1990 modified § 309 to read as follows:

"A vacancy in the Council shall exist upon the death or resignation of a Councilman, or upon forfeiture of office by a Councilman. When a vacancy has occurred more than ninety days prior to the primary or general election referred to in Section 303, a majority of the remaining members of the Council shall schedule a special election within ninety days, but not less than thirty days, to fill the vacancy. If a vacancy occurs within ninety days of the primary or general election, the vacancy shall remain until the election of the member pursuant to Section 303 and Section 306. The Council shall provide by law for the conduct of special elections to fill vacancies on the Council that occur during the term."

**3.** The Prince George's County Board of Supervisors of Elections shall hereinafter be referred to as the "Election Board."

**4.** Article XVII, § 1, provides that its

"purpose ... is to reduce the number of elections by providing that all State and county elections shall be held only in every fourth year, and at the time provided by law for holding congressional elections, and to bring the terms of appointive officers into harmony with the changes effected in the time of the beginning of the terms of elective officers...."

Section 2 provides:

"Elections by qualified voters for State and county officers shall be held on the Tuesday next after the first Monday of November ... in every fourth year...."

vest the power to regulate county elections only in the General Assembly; and 3) directly conflicted with the time and manner restrictions placed on all elections by the State Election Code, Maryland Code (1957, 1993 Repl.Vol., 1994 Supp.), Article 33.

In June 1993, Prince George's County filed a complaint in the Circuit Court for Prince George's County, alleging that the chairperson of the County Council might be resigning prior to the end of her term. The County asked the court to issue a declaratory judgment declaring § 309, as amended in 1990 by CB–78–1990, constitutional. In August 1993, the court heard oral argument. The court reserved judgment, however, because the chairperson had not resigned. In order to avoid rendering an advisory opinion, the court notified the parties that it would not issue a declaratory judgment until a vacancy had occurred.

The parties did not have to wait long, for in March 1994, Prince George's County Councilman Frank Casula was elected mayor of Laurel, Maryland. A few weeks after his election, Councilman Casula resigned from the County Council. Walter H. Maloney, a taxpayer and resident of Councilman Casula's district, filed a motion to intervene as a plaintiff and a motion for a summary judgment declaring that amended § 309 was valid. Mr. Maloney also sought an injunction requiring the Election Board to comply with the provisions of amended § 309. The circuit court granted Maloney's motion to intervene. In addition, the County filed an amended complaint deleting references to the chairperson and substituting Casula.

On April 7, 1994, the circuit court issued a declaratory judgment. The court determined that amended § 309 did not violate the Quadrennial Elections Amendment. Nevertheless, the court held that both the original and amended versions of § 309 were invalid on other grounds. The court held that the pre–1990 version of § 309 was invalid because the Express Powers Act, Maryland Code (1957, 1994 Repl.Vol.), Art. 25A, required that county council members be elected, not appointed. Moreover, the court held that amended § 309 was invalid

because: 1) neither the Express Powers Act nor the Constitution granted charter counties the authority to regulate the time and manner of special elections; 2) the General Assembly had preempted the area of election law by so comprehensively legislating in that area; and 3) the time and manner provisions of amended § 309 were in direct conflict with the time and manner provisions contained in Article 33 of the Maryland Code. According to the circuit court, Prince George's County could fill interim vacancies on its County Council by election only, but the time and manner provisions for the election would have to comply with Article 33.

Prince George's County and Mr. Maloney appealed, and the Election Board cross-appealed. On April 14, 1994, while this case was pending before the Court of Special Appeals, we issued a writ of certiorari and an order expediting the time for briefing and argument, 334 Md. 468, 639 A.2d 695. This Court heard oral argument on June 6, 1994, and we issued an order the following day affirming that part of the circuit court's declaratory judgment invalidating those portions of § 309 amended by CB–78–1990. In addition, we reversed the circuit court's declaratory judgment in part, and we ordered "that those portions of section 309 of the Prince George's County Charter, as they read prior to the purported amendment by CB–78–1990, providing for the appointment of persons to fill County Council vacancies occurring during a term, are hereby declared to be valid and operative...." We now set forth our reasons for that order.

■ Prince George's County is a charter county pursuant to Article XI–A of the Maryland Constitution, often referred to as the "Home Rule Amendment." The purpose of Art. XI–A was to authorize counties to adopt a home rule charter, and to vest in such charter counties the authority to enact local legislation within limits to be established by the General Assembly. *McCrory Corp. v. Fowler*, 319 Md. 12, 16, 570 A.2d 834, 835 (1990); *Bd. of Election Laws v. Talbot County*, 316 Md. 332, 344–345, 558 A.2d 724, 730 (1988); *Griffith v. Wakefield*, 298 Md. 381, 384, 470 A.2d 345, 347 (1984); *Ritchmount*

*Partnership v. Board,* 283 Md. 48, 56, 388 A.2d 523, 529 (1978). Article XI–A, § 2, of the Maryland Constitution requires the General Assembly to adopt legislation granting express powers to charter counties, and the General Assembly has done so by the enactment of the Express Powers Act, Code (1957, 1994 Repl.Vol.), Art. 25A. *See, e.g., McCrory Corp. v. Fowler, supra,* 319 Md. at 17, 570 A.2d at 836; *Eastern Diversified v. Montgomery Cty.,* 319 Md. 45, 49–50, 570 A.2d 850, 852 (1990); *Bd. of Election Laws v. Talbot County, supra,* 316 Md. at 344, 558 A.2d at 730; *Cheeks v. Cedlair Corp.,* 287 Md. 595, 600, 415 A.2d 255, 257 (1980); *Co. Com'rs v. Supervisors of Elec.,* 192 Md. 196, 204, 63 A.2d 735, 739 (1949).

■ The leading case in Maryland regarding the authority of charter counties to hold elections is *Co. Com'rs v. Supervisors of Elec., supra,* 192 Md. 196, 63 A.2d 735. The issue in that case was whether a charter county could hold a special election to fill the initial membership on its county council immediately after the adoption of its charter. Prince George's County and Mr. Maloney argue that the Court's opinion in that case stands for the general proposition that charter counties are authorized to hold special elections. In our view, however, the Court's opinion in *Co. Com'rs* made it clear that charter counties have been granted no authority to provide for special elections to fill interim vacancies.

In *Co. Com'rs v. Supervisors of Elec.,* the Court first considered whether the Express Powers Act granted charter counties the power to provide for elections. The Court flatly took the position that the Act gave no such authority, stating as follows (192 Md. at 204–205, 63 A.2d at 739):

"In fulfillment of th[e] mandate [in Art. XI–A, § 2 of the Maryland Constitution], the General Assembly adopted the 'Express Powers Act,' now codified as Article 25A of the Code of Public General Laws. This Act, while enumerating the granted powers in nineteen separate paragraphs, grants no power to hold elections. The only reference to elections is contained in a grant of power to rearrange and create election districts and precincts [Art. 25A, § 5(H) ]."

The Court then held that, although the General Assembly had not by the Express Powers Act granted authority to hold elections, the provisions of Art. XI–A of the Maryland Constitution itself had granted to a charter county the authority to provide for a special election to fill the initial membership on its county council. ·

In deciding that Art. XI–A provided authority to have a special election for the initial membership on the county council, the Court in *Co. Com'rs v. Supervisors of Elec.* undertook an extensive review of the Home Rule Amendment itself. The Court noted its provisions regarding the adoption of a charter, the effective date of a charter's provisions subsequent to its adoption, the transfer of local legislative power from the General Assembly to the County Council, the prohibition upon the General Assembly's enactment of local laws after a charter has been adopted,[5] and the requirement that the county council be an elected body. In light of these provisions, the Court explained that "[i]t is impossible to believe that under an Amendment embodying such emphatic directions for immediate effectiveness, it was intended that a delay of as much as four years might result before the County Council could be elected and could function." 192 Md. at 210, 63 A.2d at 741. Thus, although there was no grant of power in Art. 25A of the Code to hold elections, the Court held that Montgomery County had the power pursuant to Art. XI–A to hold a special election for the initial membership on the County Council. 192 Md. at 211, 63 A.2d at 742. Judge Niles, speaking for the Court, explained (192 Md. at 212, 63 A.2d at 742 (emphasis added)):

"[T]he power of the people of the County to create and adopt the form of government described in the Charter, and

---

5. Maryland Constitution, Art. XI–A, § 4, provides that after adoption of a charter "no public local law shall be enacted by the General Assembly for said City or County on any subject covered by the express powers granted...." *See generally McCrory Corp. v. Fowler*, 319 Md. 12, 16–17, 570 A.2d 834, 835 (1990); *Bd. of Election Laws v. Talbot County*, 316 Md. 332, 344–345, 558 A.2d 724, 730 (1988); *Ritchmount Partnership v. Board*, 283 Md. 48, 57, 388 A.2d 523, 529 (1978).

to elect its legislative body, does not depend on any legislative grant from the General Assembly, but is derived from Article XIA of the Constitution itself. *That an election must be held for members of the County Council follows inevitably from the constitutional provision that any charter adopted shall 'provide for an elective legislative body.' "*

The Court in *Co. Com'rs v. Supervisors of Elec.,* inter alia, also considered an objection based on the conflict between the time of the election for initial county council membership provided for in Montgomery County's Charter and the time specified in the Quadrennial Elections Amendment for all state and county elections. 192 Md. at 207, 63 A.2d at 740. The Court held, however, that "in light of the Home Rule Amendment and the other provisions of the Constitution," it was "impel[led] . . . to the clear conclusion that the Quadrennial Elections Amendment" does not apply to a special election for the initial membership on a county council. 192 Md. at 211–212, 63 A.2d at 742.

■ It is clear from the language and reasoning of the Court's opinion in *Co. Com'rs v. Supervisors of Elec.* that the Express Powers Act, Art. 25A, granted charter counties no authority to provide for special elections for county councilmen, and that Art. XI–A of the Constitution granted authority to hold special elections only for the initial membership of a county council immediately after the adoption of the charter. There is nothing in the Court's opinion to suggest that Art. XI–A grants charter counties the authority to fill later vacancies on their county councils by election. The Court's rationale, and the provisions of Art. XI–A relied upon by the Court, relate only to the initial membership of a county council.

■ Furthermore, there has been no change in Art. 25A since the Court's opinion in *Co. Com'rs v. Supervisors of Elec.,* which would grant charter counties the authority to provide for special elections. The only authority granted by the Express Powers Act to fill county offices and positions is the authority to provide for appointments. Article 25A, § 5(Q), authorizes charter counties to fill county offices, whose elec-

tion or appointment are not "provided for by the Constitution or public general law," by appointment. Article 25A, § 5(Q), thus states in pertinent part:

"To provide for the appointment and removal of all county officers except those whose appointment or election is provided for by the Constitution or public general law...."

As there are no provisions in the Constitution or the public general laws for appointment or election to fill interim vacancies on county councils, the authorized method under the Express Powers Act for filling these vacancies is by appointment.[6] By contrast, in Code (1957, 1994 Repl.Vol.), Art. 23A, § 2, which enumerates the powers granted to incorporated municipalities, the power to provide for special elections, as well as the authority to regulate the time and manner in which such elections take place, is specifically delineated. Art. 23A, § 2(b)(29).

In light of our decision that charter counties are not authorized by Art. XI–A of the Constitution or by the Express Powers Act to hold special elections to fill interim county council vacancies, we do not reach the issues concerning implied preemption, possible conflict with the State Election Code, possible conflict with Articles I and III of the Constitution, and possible invalidity under the Quadrennial Elections Amendment (Art. XVII of the Constitution) which have been raised by the parties in the instant case.[7] We note, however,

---

**6.** There are only two provisions for filling vacancies by special election in the State Election Code, neither of which is applicable here. *See* Art. 33, §§ 21–1 (United States Senators) and 22–1 (members of the United States House of Representatives). In fact, the provisions of the Maryland Constitution generally provide for filling interim vacancies of elected positions by appointment. *See, e.g.,* Md.Const., Art. II, § 6; Art. III, § 13; Art. IV, §§ 5, 5A, 25, 40, 41, 44; Art. V, §§ 5, 11, Art. VI, § 1. Consequently, filling interim vacancies on a county council through appointment, when those positions were originally filled at a general election, is in accord with this State's usual method for filling interim vacancies in elected offices.

**7.** Although the Court in *Co. Com'rs v. Supervisors of Elec.,* 192 Md. 196, 63 A.2d 735 (1949), discussed in some detail the Quadrennial Elections Amendment, the issue raised by the parties here, namely, whether the

that the provisions of the State Election Code, Art. 33, foreshadow the potential problems which might occur if counties were granted the authority to provide for special elections to fill interim vacancies on county councils. The provisions of Art. 33 set out in specific detail the procedures and dates for voter registration, filing by candidates, employing election officials, filing financial reports, absentee ballots, methods of voting, etc. *See County Council v. Montgomery Ass'n,* 274 Md. 52, 61, 333 A.2d 596, 601 (1974) ("Article 33 contains detailed provisions covering every aspect of the electoral process in Maryland"). The entire election framework has been carefully constructed to ensure that regular primary and general elections are conducted efficiently and fairly. *Ibid.*

---

Quadrennial Elections Amendment is applicable to special elections in general, was not before the Court. Initially, the Court in *Co. Com'rs* noted that an apparent conflict existed between the Quadrennial Elections Amendment and the provision in the Montgomery County Charter for a special election. 192 Md. at 207, 63 A.2d at 740. The Court, however, pointed out that, except for the charter provision providing for a special election to fill the initial· membership of the County Council, Montgomery County's Charter was "carefully drawn to comply with the[ ] provisions for quadrennial elections after the election of the members of the first County Council." 192 Md. at 206, 63 A.2d at 740. The Court resolved the apparent conflict between the Charter's provision for electing the initial membership and the Quadrennial Elections Amendment by harmonizing the requirements of the Art. XI–A of the Constitution with the Quadrennial Elections Amendment. Consequently, its holding that the Quadrennial Elections Amendment was not applicable to a special election to fill the initial membership of the county council was limited by the specifics of the case before it. The Court explained as follows (192 Md. at 212, 63 A.2d at 742):

"[The Quadrennial Elections Amendment was] not designed to regulate, nor does it prohibit, such a special election as that here involved with reference to the filling of [the] initial [membership of the county council] pursuant to a new charter adopted for the government of a County."

On the other hand, we recognize that the Court's opinion in *Co. Com'rs v. Supervisors of Elec.* is not entirely clear as to the applicability of the Quadrennial Elections Amendment to special elections in general. The Court's discussion of the Amendment, 192 Md. at 210–212, 63 A.2d at 741–742, could be construed as suggesting that the Amendment does not apply to special elections at all. The Attorney General has adopted such a construction of the Court's opinion in that case. 66 Op.Atty's Gen. 105, 108 (1981).

Our opinion here, however, does not decide this issue.

If charter counties may impose the additional duties on election boards to conduct special elections for county offices, the requirements, dates, etc., associated with the special elections must be coordinated with the requirements and the election boards' duties under Art. 33.

Our holding that amendment CB–78–1990 is invalid results in the reinstatement of those portions of the pre–1990 version of § 309 which are not inconsistent with our opinion herein. *Shell Oil Co. v. Supervisor,* 276 Md. 36, 48–49, 343 A.2d 521, 528 (1975); *Howard County Comm. v. Westphal,* 232 Md. 334, 343, 193 A.2d 56, 61 (1963); *Hensley v. Bethesda Metal Co.,* 230 Md. 556, 188 A.2d 290 (1963). Consequently, the pre–1990 version of § 309, providing for the filling of interim vacancies on the Prince George's County Council by appointment, is valid and in effect. The final clause of the pre–1990 version of § 309, providing for a special election if a vacancy occurs during the first two years of a term, is invalid. Any vacancy occurring during the first two years of a term should be filled by appointment, in the same manner specified by pre–1990 § 309 for a vacancy which occurs during the last two years of a term.