## COUNTIES

**CODE HOME RULE COUNTIES – ELECTIONS – ARTICLE XVII OF
MARYLAND CONSTITUTION DOES NOT BAR SPECIAL
ELECTION TO FILL INITIAL VACANCIES FOR NEW COUNTY
COMMISSIONER POSITIONS IN A CODE HOME RULE COUNTY,
BUT COMMISSIONERS MAY CALL SUCH AN ELECTION ONLY
IF AUTHORIZED BY THE GENERAL ASSEMBLY**

August 3, 2011

*Jefferson L. Ghrist, President*
*Larry C. Porter, Vice President*
*Wilbur Levengood, Jr., Commissioner*
*Caroline County Commissioners*

You have requested our opinion on a proposal to expand the
number of county commissioners in Caroline County from three to
five and to conduct an election that would coincide with the date of
the 2012 presidential election to fill the two new positions. Under
the proposal, the two new positions would each have an initial two-
year term; subsequent terms would be four years. As a result, all
five county commissioner offices would be on the ballot in 2014 –
and every four years thereafter – for election to four-year terms.

The proposal you have outlined raises the following questions:
(1) whether the election contemplated for 2012 to fill the new
positions would be a general or a special election; (2) whether the
commissioners of a code home rule county have the authority to
order an election to fill the initial vacancies; and (3) whether holding
such an election is consistent with Article XVII of the Maryland
Constitution, the Quadrennial Elections Article.[1]

---

[1] The commissioners of a code county like Caroline County do have
the authority to alter the number of county commissioners. *See*, *e.g.*,
Letter of Assistant Attorney General Richard E. Israel to Janice Davison,
Deputy County Attorney for Caroline County (May 29, 1997); Letter of
Assistant Attorney General Kathryn M. Rowe to Delegate Susan W. Krebs
(May 17, 2006).

In our opinion, the proposed 2012 election to fill the new positions would be a special election. Further, though less clear, we believe that code home rule counties have not been delegated the authority to conduct a special election for this purpose. However, were the General Assembly to delegate such authority, we agree with the County Attorney that Article XVII would not bar a special election for this purpose in 2012.[2]

# I

## Background

### A. *Code Home Rule Powers*

Counties are subdivisions of the State and may act only within the scope of the powers conferred upon them. *See Eastern Diversified Properties, Inc. v. Montgomery County*, 319 Md. 45, 49, 570 A.2d 850 (1990). Caroline County is a code home rule jurisdiction as provided in Article XI-F of the Maryland Constitution. Code home rule counties derive their powers from two main sources – the Constitution itself and legislation enacted by the General Assembly. *See Kent Island Defense League, LLC v. Queen Anne's County Bd. of Elections*, 145 Md. App. 684, 688, 806 A.2d 341 (2002).

First, with respect to the Constitution, section 3 of the Code Home Rule Article provides: "Except as otherwise provided in this Article, a code county may enact, amend, or repeal a public local law of that county, following the procedure in this Article." Maryland Constitution, Article XI-F, §3. For purposes of this provision, a "public local law" includes "a law applicable to the incorporation, organization, or government of a code county and contained in the county's code of public laws . . .." *Id*., §1(2). This is a direct grant of authority to a home rule county by the Constitution itself. 62 *Opinions of the Attorney General* 275, 286-87 (1977).

---

[2] In compliance with our policies concerning opinion requests from local governments, you provided the analysis of the County Attorney. Opinion 2011-1 of the County Attorney to the County Commissioners of Caroline County, Maryland (January 24, 2011). That opinion focused on whether an election to fill the two new positions in 2012 would violate the Quadrennial Elections Article. It did not specifically address the issue of the authority of commissioners in a code county to hold a special election to fill an initial vacancy in a newly-created office.

In addition to the authority conferred directly by §3 of Article XI-F, the General Assembly has granted code home rule counties certain optional home rule powers in Article 25B of the Annotated Code of Maryland. The general scope of that authority is described as follows:

> If a county adopts code home rule status under the provisions of Article XI-F of the Maryland Constitution and this article, it may exercise those powers enumerated in Article 25, and in §5 of Article 25A, except for subsections (A), (P) and (S) of §5 of Article 25A, of the Annotated Code of Maryland, 1957 Edition as amended; and no county adopting code home rule status shall be excepted. These powers are in addition to any powers any county may now have under any public general or local law applicable to the county.

Article 25B, §13. These powers include, therefore, many of the same powers granted to charter counties under the Express Powers Act, Article 25A, §5. One of the provisions of the Express Powers Act explicitly addresses special elections. In particular, §5(Q)(2) grants authority: "To provide for the conduct of a special election to fill a vacancy in the county council that occurs upon the death or resignation of a member of the county council or on forfeiture of office by a member of the county council."[3]

## B.  *Quadrennial Elections Article*

### 1.  **General Rule**

The Quadrennial Elections Article of the Maryland Constitution, sometimes referred to as the "Fewer Elections Amendment," sets a timetable for the election of State and county officers. It provides, in part, that "all State and county elections shall be held only in every fourth year, and at the time provided by law for holding congressional elections ...." Maryland Constitution, Article XVII, §1. It specifies that all such elections "shall be held on Tuesday next after the first Monday of November, in the year

---

[3] This provision was added to the Express Powers Act in 1996, as further described in the next section of this opinion. Chapter 674, Laws of Maryland 1996.

nineteen hundred and twenty-six, and on the same day in every fourth year thereafter." *Id.*, §2. By that calculation, the next date for holding elections for State and county officers is November 4, 2014.

## 2. Exception for County Council Vacancies

The Quadrennial Elections Article was amended in 1996 to create an exception for "a special election that may be authorized to fill a vacancy in a County Council under Article XI-A, Section 3 of the Constitution." Chapter 81, Laws of Maryland 1996, *amending* Article XVII, §2 (ratified Nov. 5, 1996).[4] The same law also made a corresponding amendment to Article XI-A. Specifically, new language was added to Article XI-A, §3 enabling charter counties "as expressly authorized by statute, to provide for the filling of a vacancy in the County Council by special election . . .."

These constitutional amendments were implemented in separate legislation that amended the Express Powers Act and State election code (then codified in former Article 33). *See* Chapter 674, Laws of Maryland 1996. As part of that legislation, subsection 2 was added to Article 25A, §5(Q), which, as mentioned above, grants charter counties the power to fill by special election council vacancies occurring "upon the death or resignation . . . or on forfeiture of office by a member of the county council." The State election code was amended to direct local boards of elections to conduct special elections that are authorized by county charter "in accordance with the provisions of the charter" and to adopt regulations as necessary to conduct the special election.[5] That provision was later recodified as part of the Election Law Article ("EL") and, as amended, authorizes a special primary and special general election "to fill a vacancy in the county council if the charter of that county provides for special elections." EL §8-401(a)(2).

---

[4] These amendments were designed to supersede *Prince George's County v. Bd. of Supvrs of Elections of Prince George's County*, 337 Md. 496, 505, 654 A.2d 1303 (1995) ("*Prince George's County*"), which held that charter counties did not have authority to hold special elections for interim vacancies. *See* 1996 Legislative File for Senate Bill 524, "Statement of Senator Leo Green Before the Senate Environmental & Economic Matters Committee" (February 12, 1996).

[5] This provision was codified in §2-9(h) to former Article 33.

## II

## Analysis

### *A.  Whether a 2012 Election Would be a "Special Election"*

A preliminary question is whether the proposed plan to fill two new positions on the Board of County Commissioners at the 2012 presidential election would involve a "special election" or a "regular election," also sometimes referred to as a "general election."  The basic distinction between a general election and a special election has been described as follows:

> A regular or general election is . . . "one which recurs at stated intervals as fixed by law; it is one which occurs at stated intervals without any superinducing cause other than the efflux of time."  The same authority defines a special election as "one that arises from some exigency or special need outside the usual routine, such as to fill a vacancy in office, or to submit to the electors a measure or proposition for adoption or rejection." This distinction between a general election and a special election appears to have practically universal recognition.

32 *Opinions of the Attorney General* 165, 168 (1947) (citations omitted).  Similarly, the Court of Appeals has observed that a general election has for its purpose "the regularly recurring selection of an officer after the expiration of the full term of the former officer."  *County Comm'rs for Montgomery County v. Supvrs of Elections of Montgomery County*, 192 Md. 196, 211, 63 A.2d 735 (1949); *see also Cohen v. Governor of Maryland*, 255 Md. 5, 17, 255 A.2d 320 (1969) (discussing multiple senses of the term "general election," including one that "regularly recurs at fixed intervals without any other requirements than the lapse of time").

An election to fill initial vacancies on an expanded Board of County Commissioners in 2012 would not satisfy the definition of a regular or general election, even if that election were to coincide with the date of the presidential election.  Such an election would arise as a consequence of the decision to enlarge the Board, an act which is plainly "outside the usual routine."  Without that action by the commissioners, no elections for county commissioner would

occur in 2012 in the normal course. By contrast, no special provision need be made for an election including the new positions in 2014 – elections for all county commissioner offices will be held on November 4, 2014, as directed by the Quadrennial Elections Article.

Although the regular presidential election is scheduled for November 2012, holding a special election on the same day as a regular or general election does not make the "special" election "general." For example, the Court of Appeals has held that where a vote on a constitutional convention was called pursuant to an act of the General Assembly, that vote was a "special election," even though it was held simultaneously with a general election. *Board of Supvrs of Elections for Anne Arundel County v. Attorney General,* 246 Md. 417, 433, 229 A.2d 388 (1967) ("Several courts have sustained the proposition that a special election may be held concurrent with a general election without losing its separate and special character.") (internal quotations and citations omitted); *see also Fox v. Paterson*, 2010 WL 2222446 at *6-7 (W.D.N.Y. 2010); *Jackson v. Ogilvie*, 426 F.2d 1333, 1338 (7th Cir. 1970) (Governor's discretion as to timing of federal special election includes right to order special election to coincide with another election).[6]

The proposed timing for a special Caroline County election coincident with the presidential election would certainly be more efficient than conducting the local election on a separate day, but conducting a county commissioner election in a non-gubernatorial election year is not "regular." Instead, the proposed off-year election would be a one-time event, happening not by virtue of the election calendar alone, but upon the order of the county commissioners on a date of their choosing. This raises the question whether the Board of County Commissioners has been delegated the authority to fill an initial vacancy by means of a special election.

---

[6] In allowing a special election to be held on a day other than that of the regular election, the Election Law Article recognizes, by implication, that a special election may also be held coincident with a regular election: "A special primary election and a special general election may be held at a time other than the date of a regular primary election and a regular general election [to fill certain vacancies]." EL §8-401(a).

**B.**     ***Whether the Commissioners May Order a Special Election for this Purpose***

A code home rule county's authority to call special elections, express or implied, must be derived from either Article XI-F of Constitution or from the legislative delegation of powers in Article 25B of the Annotated Code of Maryland. As discussed below, we believe that neither source gives code home rule counties the power to order a special election to fill newly created county offices.

### 1.     Express Authority under Article 25B, §13

As noted above, Article 25B, §13 confers on code counties most of the express powers enjoyed by charter counties, including the authority in Article 25A, §5(Q)(2) to "provide for the conduct of a special election to fill a vacancy in the county council that occurs upon the death or resignation of a member of the county council or on forfeiture of office by a member of the county council."[7] Thus, §5(Q)(2) lists three particular kinds of vacancies for which a county charter may provide a special election: death, resignation, or forfeiture of office. However, that statute does not explicitly grant authority to hold a special election for *newly created offices*.

Should the statute be construed to include circumstances that create a vacancy in addition to those specifically mentioned? Under a basic canon of statutory construction, when a statute lists specific conditions precedent for the exercise of some power or authority, the courts will not infer other conditions for the exercise of that power. *See, e.g., WFS Financial, Inc. v. Mayor & City Council*, 402 Md. 1,

---

[7] As described in Part I.B. above, this language was added to the Express Powers Act in 1996 in conjunction with amendments of Articles XI-A and XVII of the Maryland Constitution. The 1996 amendments made no direct change to the powers of code counties under Article XI-F. In our review of the legislative files, we found no mention of the possible effect that the bills would have with respect to code home rule counties. Thus, it is not entirely clear that the authority to hold a special election to fill vacancies in county council positions was intended to extend to county commissioner vacancies. In any event, as explained in the text, we do not believe that the provision applies to vacancies resulting from newly-created positions.

14, 935 A.2d 385 (2007).[8]  Under this canon, it is ordinarily presumed that the General Assembly intended to exclude situations that are not listed in a statute.  Thus, because §5(Q)(2) grants authority to call a special election for certain situations that create a vacancy, it should not be construed to authorize the calling of a special election in other circumstances, such as the initial filling of a newly created position.  Moreover, it is entirely reasonable that the General Assembly might distinguish between special elections to fill vacancies caused by death, resignation, or forfeiture of office and special elections to fill vacancies in newly created offices.  In each of the circumstances listed in the statute, the occasion requiring the election is not within the control of the same body that would decide when to fill the office.

For these reasons, it is our view that  §5(Q)(2) of Article 25A, applicable to code home rule counties through Article 25B, §13, does not include the power to fill initial vacancies by special election.

### 2.    Implied Powers of Code Home Rule Counties under Article XI-F

An argument might be made that code home rule counties have been granted the authority to call a special election by implication, as an incident to the commissioners' power to create the new offices, a power that is within a code county's general authority to enact laws "applicable to the incorporation, organization or government of a code county."  Article XI-F.  However, in our view, the General Assembly retains the power to call special elections except to the extent that power has clearly been delegated to local government. A clear delegation is lacking here, for several reasons.  First, the power to create an office does not necessarily imply the right to fill it by special election.  Second, it does not appear that Article XI-F was intended to give code counties greater authority over elections than charter counties possess under Article XI-A and the Express Powers Act.  Third, without a clear expression of legislative intent, we

---

[8] This canon of construction is sometimes referred to as the "doctrine of *expressio (or inclusio) unius est exclusio alterius*."  *WFS Financial*, 401 Md. at 14.  A related rule of statutory construction, known as *ejusdem generis*, expresses "the supposition that if the legislature had intended the general words to be construed in an unrestricted sense, it would not have enumerated the specific things."  *In re Wallace W*., 333 Md. 186, 190-91, 634 A.2d 53 (1993).

believe that courts would be reluctant to infer local authority over an area, such as elections, that is so pervasively regulated by State law.

> *a. whether power to create office implies power to call special election*

Maryland courts have not embraced the notion that the power to create an office necessarily implies the power to call an election to fill it. *See, e.g.*, *Ames v. Bd. of Supvrs of Elections of Montgomery County*, 195 Md. 543, 550, 74 A.2d 29 (1950); *Prince George's County v. Bd. of Supvrs of Elections of Prince George's County*, 337 Md. 496, 505, 654 A.2d 1303 (1995); *see also* Letter of Assistant Attorney General Kathryn M. Rowe to Delegate Donald B. Elliott (July 31, 2006) at p. 1 (noting that, although the number of the commissioners was a proper subject for the commissioners of a code county, "the manner of their election is a matter for the General Assembly under Article VII, §1"). Rather, the power to enact laws for the organization of government has generally been treated as separate and distinct from the power to regulate elections, or to decide what matters or questions may appear on the ballot. *See, e.g.*, *Prince George's County*, 337 Md. at 506-7; *Levering v. Bd. of Supvrs of Elections*, 129 Md. 335, 337-38, 99 A. 360 (1916) (control of ballot); 61 *Opinions of the Attorney General* 384, 387-88 (1976) (concluding that power to hold local straw vote requires State authorization).

Only in one limited circumstance has the Court of Appeals held that local authority to order a special election may be implied from some other power or duty. In *County Comm'rs for Montgomery County v. Supvrs of Elections of Montgomery County*, 192 Md. 196, 63 A.2d 735 (1949) ("*Montgomery County*"), the Court found that a county's decision to convert to a charter form of government under Article XI-A included the power to fill initial county council vacancies by special election. *See also Connor v. Bd. of Election Supvrs of Baltimore County*, 212 Md. 379, 385, 129 A.2d 396 (1957) (upholding plan for one-time special election incident to charter conversion). The Court reasoned that, without that power, a county that opted for charter home rule could face an extended interregnum, without any local legislative authority, if the election of the first county council would have to await the next regular election. *Montgomery County,* 192 Md. at 209-10. Such a result "would be so violent, and so out of harmony with the established doctrines of government of this State that it should be avoided if possible." *Id*. at 209. The Court further reasoned that a lengthy delay before holding elections also would be inconsistent with the

comparatively swift charter process envisioned in Article XI-A: "It is impossible to believe that under an Amendment embodying such emphatic directions for immediate effectiveness it was intended that a delay of as much as four years might result before the County Council could be elected and could function." *Id*. at 210; *see also Prince George's County,* 337 Md. at 505 (interpreting *Montgomery County* and explaining special need for implied power under Article XI-A to fill initial council vacancies upon conversion to charter home rule).[9]

Shortly after its *Montgomery County* decision, the Court of Appeals cautioned that the reasoning it had followed in that case — based in part on a constitutional mandate that contemplated the immediate creation of an instrument of government — "can hardly apply to subsequent elections." *Ames v. Bd. of Supvrs of Elections of Montgomery County*, 195 Md. at 550.

In *Ames*, the Court rejected the notion that the "power to prescribe the manner of nomination and election [of a council member] must be implied" from Article XI-A's mandate to "provide for an elective legislative body." *Id*. at 549. The Court stated: "The question of future elections was expressly left open in [*Montgomery County*]." *Id*. And again in *Prince George's County* the Court reiterated that *Montgomery County* "was limited by the specifics of the case before it." 337 Md. at 509 n.7.[10] Thus, the Court has found

---

[9] The Court in *Montgomery County* also decided that the Quadrennial Elections Article did not apply to special elections to fill initial county council vacancies occurring upon adoption of a home rule charter under Article XI-A of the Maryland Constitution. 337 Md. at 211-12. Because conversion to charter home rule effected the immediate transfer of legislative power from the General Assembly to an elective legislative council, delaying elections to populate the council until the next quadrennial election date would have left the county with no legislative direction whatsoever for a two-year period. *Id*., 214. The Court reasoned that such a result would be inconsistent with the constitutional framework and could not have been intended.

[10] In *Prince George's County*, the Court of Appeals not only declined to extend its earlier holding but also rejected the argument that either Article XI-A or the Express Powers Act conferred implied or express authority to fill interim vacancies by special election. At issue there was amended §309 of the county charter, which required council vacancies occurring during the first two years of a term to be filled by

(continued...)

implied authority to hold a special election only in the limited, and unique, circumstance of filling initial vacancies upon a county's conversion to a charter form of government.

The unique circumstances present in *Montgomery County* are lacking when an already existing and functioning government body is simply enlarged. In the former situation, the adoption of the charter prohibited the General Assembly from enacting local laws for the county on any subject covered by the Express Powers Act. *See* 192 Md. at 208-9. At the same time, the legislative powers of the prior commissioner form of government were also limited. Consequently, during the "interregnum" period, "there [was] no body in the State competent to enact local legislation to meet the needs of Montgomery County." *Id*. at 209. That would not be true of the plan contemplated for Caroline County. Under its proposal, pending an election of additional members, the existing board will continue to function without any diminution of its powers. Moreover, no voter in the county will be left unrepresented during the period between the commissioners' decision to expand the board and the date of the next general election. And whereas the Home Rule Amendment (Article XI-A) "contemplates that any new charter shall go into effect promptly after its ratification by the people," *id*. at 209-10, a plan to expand the number of county commissioners imposes no similar constitutional duty to speedily implement that decision. In short, *Montgomery County* offers no support for the idea that code home rule counties have implied authority to conduct special elections, nor do subsequent cases suggest that its rationale should be extended beyond the specific context of charter adoption.

---

[10] (...continued)
special election. 337 Md. at 500. The circuit court ruled the charter section invalid because, among other reasons, neither the Express Powers Act nor the Constitution granted charter counties the authority to regulate the time and manner of special elections. *Id*. at 502-03. The Court of Appeals affirmed that part of the circuit court judgment, observing that the *only* power to call special elections implied by Article XI-A of the Constitution (at that time) was the power to fill initial vacancies immediately upon conversion to charter home rule. *Id*. at 506. Subsequent amendments expanded that authority. *See* Part I.B. of this opinion.

        *b.*    *comparison between Article XI-A and Article XI-F*

There appears to be no compelling reason to infer that a code county would have greater authority under Article XI-F than a charter county has under Article XI-A to call a special election to fill vacancies created by an expansion of its legislative body.[11] Despite some differences in the way that the two county home rule amendments operate, their basic purposes are the same. Of relevance to elections, a code county's legislative authority extends to laws "applicable to the incorporation, organization or government of a code county," Article XI-F, §1, and to matters enumerated in Article 25B, §13. By comparison, county charters include provisions for "the organization and structure of local government," 66 *Opinions of the Attorney General* at 108, and the broad home rule powers of county councils include general authority to enact ordinances "for the good government of the county." Article 25A, §5(S). In our view, there is not much in the language to distinguish one from the other or to conclude that Article XI-F implies a power to conduct special elections where Article XI-A does not.

        *c.*    *State control over elections*

A final factor against concluding that the commissioners have the implied power to call a special election is the State's extensive control over the elections process. *Cf. Board of Liquor License Commissioners v. Fells Point Café, Inc.*, 344 Md. 120, 135-36, 685 A.2d 772 (1996) (comprehensive statutory scheme necessarily circumscribes implied agency authority). For example, as to Caroline County's ability to place an advisory question on the ballot, an advice letter from this Office explained:

---

[11] It must be acknowledged, however, that there is little guidance on the comparative scope of legislative powers granted to county governments under the two forms of home rule. *See, e.g.*, 62 *Opinions of the Attorney General* 275, 283 (1977) (noting that the framers' report on proposed Article XI-F stated that it provided "an optional system for attaining home rule . . . [and] for the granting of *broader powers* by home rule to a county than does Article 11-A of the Constitution") (emphasis added); *see also* 77 *Opinions of the Attorney General* 37, 38 (1992) ("This office has suggested that the scope of this lawmaking power [directly under Article XI-F] is to be broadly construed, but the matter has not been definitely resolved by the courts.").

> Except for municipal elections, the State has generally pre-empted the regulation of elections in Maryland. . . In [*County Council for Montgomery County v. Montgomery Ass'n*, 274 Md. 52, 62 (1975)], the Court of Appeals said "[t]his pervasive state administrative control of the election process, in both the statewide and local levels, is a compelling indication that the General Assembly did not intend that local governments should enact election laws, but rather intended that the conduct and regulation of elections be strictly a state function."

Letter of Assistant Attorney General Richard E. Israel to Senator Richard F. Colburn (May 1, 1997) at p. 1.

Under the State Constitution, "[t]he General Assembly shall have power to regulate by Law, not inconsistent with this Constitution, all matters which relate to Judges of election, time, place, and manner of holding elections in this State, and of making returns thereof." Maryland Constitution, Article III, §49. "These provisions [former Article III, §§ 42, 49] demonstrate that the framers of our Constitution contemplated that the regulation of elections would be the province of the State Legislature." *County Council for Montgomery County v. Montgomery Ass'n, Inc*., 274 Md. 52, 60 (1975) (holding that with former Article 33, General Assembly had occupied the field of campaign finance laws, preempting local legislation on the subject); *see also* 64 *Opinions of the Attorney General* 110, 115 (1979) ("[I]t cannot be doubted that the General Assembly may exercise its residual power over State affairs to repeal the local laws of a code county that purport to create precincts and provide for the appointment of election officials by the election supervisors . . .."). In light of the General Assembly's central role and its "pervasive" regulation of State and local elections, we would be cautious about finding a delegation of authority in this area without a clear expression of legislative intent.

## C.   *Whether Article XVII Applies to Special Elections*

A final question is whether the authority of the General Assembly to authorize the county to fill an initial vacancy by special election is limited by the Quadrennial Elections Article. The issue has been raised before the Court of Appeals more than once, but has never been finally settled.[12] In *Montgomery County*, though it decided that the Quadrennial Elections Article did not apply to the special elections at issue in that case, the Court explained that it was "designed for, and its effect is limited to, the establishment of a system to regulate general elections for the purpose of selecting officers after the expiration of the full terms of former officers." 192 Md. at 212. The Court also noted that the General Assembly's prior legislation with respect to special elections for vacancies "caused by death, resignation, or otherwise," showed that the Legislature, too, understood that the Article did not govern special elections. *Id*. at 210-11. Based on the Court's reasoning in *Montgomery County*, Attorney General Sachs opined that the Quadrennial Elections Article "does not apply to special elections." 66 *Opinions of the Attorney General* 105, 108 (1981). In our view, that conclusion remains sound.[13]

## III

## Conclusion

For the reasons explained above, the proposed 2012 election to fill the new positions created by an expansion of the board of county commissioners would be a special election. In our view, code home rule counties have not been delegated the authority to conduct a

---

[12] In *Prince George's County*, the Court observed that its earlier opinion in *Montgomery County* could be read to say that "the Amendment does not apply to special elections at all." It then declined to rule on the issue. 337 Md. at 509 n.7.

[13] That opinion also concluded that a charter county had "ample legislative power" to provide for special elections to fill interim council vacancies. 66 *Opinions of the Attorney General* at108. However, the Court of Appeals subsequently concluded that charter counties lacked such authority. *See Prince George's County v. Bd. of Supvrs of Elections of Prince George's County*, 337 Md. 496, 654 A.2d 1303 (1995). The State Constitution was subsequently amended to permit charter counties to call special elections for that purpose in certain circumstances. *See* Part I.B.2 of this opinion.

special election for this purpose. However, were the General Assembly to delegate such authority, we agree with the County Attorney that Article XVII would not bar a special election for this purpose in 2012.

Douglas F. Gansler
*Attorney General*

Jeffrey L. Darsie
*Assistant Attorney General*

Robert N. McDonald
*Chief Counsel*
  *Opinions and Advice*



J. JOSEPH CURRAN, JR.
ATTORNEY GENERAL

CARMEN M. SHEPARD
DEPUTY ATTORNEYS GENERAL

ROBERT A. ZARNOCH
ASSISTANT ATTORNEY GENERAL
COUNSEL TO THE GENERAL ASSEMBLY

RICHARD E. ISRAEL
KATHRYN M. ROWE
SANDRA J. COHEN
ASSISTANT ATTORNEYS GENERAL

# THE ATTORNEY GENERAL
# OF MARYLAND

OFFICE OF
COUNSEL TO THE GENERAL ASSEMBLY
104 LEGISLATIVE SERVICES BUILDING
90 STATE CIRCLE
ANNAPOLIS, MARYLAND 21401-1991
BALTIMORE & LOCAL CALLING AREA (410) 841-3889    FAX (410) 841-3890
WASHINGTON METROPOLITAN AREA (301) 858-3889  FAX (301) 858-3890
TTY FOR DEAF - ANNAPOLIS (410) 841-3814 - D.C. METRO (301) 858-3814

May 1, 1997

The Honorable Richard F. Colburn
4731 Egypt Road
P. O. Box 1237
Cambridge, Maryland  21613-1237

Dear Senator Colburn:

This is in response to your request for advice of counsel on whether the County Commissioners of Caroline County may require the County Election Board to place an advisory question on the ballot. In my judgment, the County Commissioners do not have this authority.

Except for municipal elections, the State has generally pre-empted the regulation of elections in Maryland. *See* Md. Code, Art. 33, §1-1(a)(6) and *County Council for Montgomery County v. Montgomery Association*, 274 Md. 52, 60 and 62 (1975). In this case, the Court of Appeals said "[t]his pervasive state administrative control of the election process, in both the statewide and local levels, is a compelling indication that the General Assembly did not intend that local governments should enact election laws, but rather intended that the conduct and regulation of elections be strictly a state function [footnote omitted]." *Id.* at 62. Therefore, except as prescribed by the Constitution, *see* Articles XIV and XVI, only the Legislature can prescribe the objects of voting in elections conducted by the election boards for the various counties. *See Levering v. Board of Supervisors of Elections*, 129 Md. 335, 337-338 (1916). Citing these cases, this office has concluded that, except perhaps for a charter county, a county governing body

cannot require a county election board to place an advisory question on the ballot.  Such a mandate requires a State statute or, in the case of a charter county, a charter provision. 61 *Opinions of the Attorney General* 384, 387-388 (1976).  Caroline County is a code home rule county, not a charter county.

As county election boards are instrumentalities of the State and are governed by State law, the Caroline County Commissioners cannot require the Caroline County Board of Supervisors of Elections to conduct a straw ballot in the absence of a State statute.

Sincerely,

Richard E. Israel
Assistant Attorney General

REI:maa
rei\colburn.3



J. JOSEPH CURRAN, JR.
ATTORNEY GENERAL

CARMEN M. SHEPARD
DEPUTY ATTORNEYS GENERAL

ROBERT A. ZARNOCH
ASSISTANT ATTORNEY GENERAL
COUNSEL TO THE GENERAL ASSEMBLY

RICHARD E. ISRAEL
KATHRYN M. ROWE
SANDRA L. COHEN
ASSISTANT ATTORNEYS GENERAL

# THE ATTORNEY GENERAL
# OF MARYLAND

OFFICE OF
COUNSEL TO THE GENERAL ASSEMBLY
104 Legislative Services Building
90 State Circle
Annapolis, Maryland 21401-1991
Baltimore & Local Calling Area (410) 841-3889   FAX (410) 841-3890
Washington Metropolitan Area (301) 858-3889   FAX (301) 858-3890
TTY For Deaf - Annapolis (410) 841-3814 - D.C. Metro (301) 858-3814

May 29, 1997

Janice Davison, Esquire
Deputy County Attorney
 for Caroline County
3 N. First Street
Denton, Maryland  21629-0590

Dear Ms. Davison:

This is in response to your inquiry concerning a popular vote on increasing the number of commissioners of Caroline County from three to five. Assuming that the Commissioners may make this change by local law, there is only one way in which voter sentiment could be polled under existing law. That is by the voters petitioning the law to referendum. The Commissioners could not require the County Election Board to conduct an advisory or binding referendum on the issue. However, the General Assembly could enact local legislation requiring an advisory vote, and general legislation requiring a binding vote.

Section 2 of Article VII of the State Constitution provides that, except in counties governed by Article XI-A (Charter Home Rule), the number of county commissioners is such as may be prescribed "by law". However, unlike Sec. 1, which expressly refers to commissioners being elected by districts, at large, or by a combination of the two, as provided "by the General Assembly by law", there is no express requirement in Sec. 2 that the law prescribing the number be enacted by the General Assembly. Moreover, the Code Home Rule Article, which applies to Caroline County, expressly authorizes the

Janice Davison, Esquire
May 29, 1997
Page 2

county commissioners of a code county to amend the local law in the local code on matters relating to the government of the county. Md. Const., Art. XI-F, Secs. 1 and 3. The clear implication is that the county commissioners of a code county may amend the local code to alter the number of county commissioners. Currently, the local code for Caroline County provides that there are three members of the Board. Public Local Laws for Caroline County, Sec. 18-1. Your inquiry concerns how the voters might be given a say in increasing this number.

If the County Commissioners of Caroline County enacted a local law to alter the number of commissioners, the voters could exercise their right under the Code Home Rule Article to petition this law to a referendum. *See* Md. Const., Art. XI-F, Sec. 7, and Md. Code, Art. 25B, §10. However, in the absence of authorizing legislation enacted by the General Assembly, the commissioners could not require an advisory or binding vote on this issue. The reason is that the State has generally pre-empted the regulation of elections. *See County Council v. Montgomery Association*, 274 Md. 52, 60 and 62 (1975). Therefore, except as provided in Article XI-F and other provisions of the Constitution, only the Legislature can prescribe the objects of voting in elections conducted by the election boards for the various counties. *See Levering v. Board of Supervisors of Elections*, 129 Md. 335, 337-338 (1916).

As the Legislature has generally pre-empted the regulation of elections, it has been understood that the Legislature can require an advisory or "straw" vote in a particular county, even if that county has home rule. *See* 61 *Opinions of the Attorney General* 384, 387-388 (1976). However, I doubt that the General Assembly could enact a local law for a home rule county requiring a binding vote on a matter within the county's home rule powers. Such a binding vote by the people would unduly interfere with the legislative powers granted to the governing bodies of such counties. Of course, there would be no legal objection to the Legislature requiring such a binding vote by general legislation. Moreover, in the case of the code counties, such legislation could be enacted for particular regions. *See* Md. Const., Art. XI-F, Secs. 4 and 5, and Ch. 666, *Laws of Maryland, 1997*.

In your letter of May 16, 1997, the two matters raised are premised on the understanding that the General Assembly may enact local legislation for a code county which provides for a binding vote on an issue. However, as indicated, I do not share this understanding regardless of whether such a vote is called a referendum or binding ballot question. There is, I believe, a distinction between the Legislature enacting a local law for a code county requiring a straw vote and one requiring a binding vote. Legislation requiring a straw vote in such a county does not involve any consideration of home rule

Janice Davison, Esquire
May 29, 1997
Page 3

and is entirely a matter for the Legislature. However, legislation requiring a binding vote in such a county would involve consideration of home rule as well as the State's power over elections. Accordingly, if there is to be an advisory vote on the number of commissioners for Caroline County, there is a need for State legislation, but it can be a local law. However, if the vote is to be binding, I think the State law would have to be a general law.

In conclusion, the only vote which can be conducted under existing law in Caroline County on whether there should be five commissioners would be one which results from petitioning a local law on the subject to referendum. To have a straw vote would require enactment of a local law by the General Assembly. To have a binding vote would, I think, require general legislation enacted by the General Assembly.

Sincerely,

Richard E. Israel
Assistant Attorney General

REI:maa
rei\davison

*Barbara*

J. JOSEPH CURRAN, JR.
ATTORNEY GENERAL

DONNA HILL STATON
MAUREEN DOVE
Deputy Attorneys General

ROBERT A. ZARNOCH
Assistant Attorney General
Counsel to the General Assembly

BONNIE A. KIRKLAND
KATHRYN M. ROWE
SANDRA J. COHEN
Assistant Attorneys General



# THE ATTORNEY GENERAL OF MARYLAND
## OFFICE OF COUNSEL TO THE GENERAL ASSEMBLY

July 31, 2006

The Honorable Donald B. Elliott
Box 170, 204 Lambert Avenue
New Windsor, Maryland 21776-0370

Dear Delegate Elliott:

You have asked for advice concerning the possibility of placing Code Home Rule for Carroll County on the ballot in the 2006 election. Specifically, you have asked whether the County can make the move to five commissioners once it has Code Home Rule. You have also inquired whether a change to five commissioners could take effect prior to 2010. It is my view that, if Code Home Rule is adopted by Carroll County, the Commissioners would have the authority to increase the membership of the Board of County Commissioners.[1] It is also my view that the Fewer Elections Amendment to the Constitution would prevent the change in the number of Commissioners from being given effect before the 2010 election.

In a letter to the Honorable Susan W. Krebs dated May 17, 2006, I advised that the County Commissioners would have the authority to set the number of commissioners by law if Code Home Rule were adopted. A copy of that letter is attached.

Article XVII of the Maryland Constitution, frequently referred to as the "Fewer Elections Amendment," provides that "[e]xcept for a special election that may be authorized to fill a vacancy in a County Council under Article XI-A, Section 3 of the Constitution, elections by qualified voters for State and county officers shall be held on Tuesday next after the first Monday of November, in the year [1926], and on the same day in every fourth year thereafter." The effect of this language is that, if the number of commissioners is increased after Code Home Rule is adopted at the 2006 election, the commissioners could not be elected until 2010. I should also note that, while the number of the commissioners may be raised by the Board of Commissioners if Code Home Rule is adopted, the manner of their election is a matter for the General Assembly under Article VII, § 1.

---

[1] In order for this issue to appear on the ballot at the general election in 2006, the County Attorney would need to certify the question to the Carroll County Board of Elections by August 21, 2006. *See* Election Law Article § 7-103(c)(3) (as amended by Ch. 120, Laws of Maryland 2006). Therefore, the County Commissioners would need to satisfy the procedural requirements under Article 25B, § 3 *et al.*, and adopt the final resolution to adopt code home rule in advance of that date.

The Honorable Donald B. Elliott
July 31, 2006
Page 2

Thus, a change from at large to districts would most likely have to be adopted by the General Assembly rather than by the commissioners. I expect that the pending opinion in the case of *Getty v. Board of Elections*, 393 Md. 158 (2006) will provide additional guidance with respect to this matter.

Sincerely,

Kathryn M. Rowe
Assistant Attorney General

KMR/kmr
elliott09.wpd

J. Joseph Curran, Jr.
Attorney General

Donna Hill Staton
Maureen Dove
Deputy Attorneys General



Robert A. Zarnoch
Assistant Attorney General
Counsel to the General Assembly

———

Bonnie A. Kirkland
Kathryn M. Rowe
Sandra J. Cohen
Assistant Attorneys General

# The Attorney General of Maryland
## Office of Counsel to the General Assembly

May 17, 2006

The Honorable Susan W. Krebs
1696 Springmont Drive
Eldersburg, Maryland 21789

Dear Delegate Krebs:

You have asked for advice concerning the composition and election of the Board of County Commissioners of Carroll County if the County were to adopt code home rule. Specifically, you have asked whether the manner of election of, and districts for, the County Commissioners would be set by the County Commissioners or by the General Assembly. It is my view that the county commissioners could set the number of commissioners. However, there is some question as to whether they could set the manner of election, or establish districts for that purpose.

Article XI-F of the Constitution, enacted in 1966, permits a county to adopt code home rule and sets out the procedures for doing so. A county that has adopted code home rule has the power to "enact, amend, or repeal a public local law of that county, following the procedure in this Article." Article XI-F § 3. Moreover, except as "otherwise provided in this Article," the General Assembly may not enact, amend, or repeal a public local law which is special or local in its terms or effect within a code county, but must act by general laws applicable to all code counties or to all code counties within a classification established by the General Assembly under Article XI-F § 5.[1] Article XI-F § 4. A public local law is one "applicable to the incorporation, organization, or government of a code county and contained in the county's code of public local laws." Article XI-F § 1(2). Based on these provisions, and the fact that the number of commissioners is found in the local code, this office has taken the position that the county commissioners could alter the number of commissioners by a local law. Letter to the Honorable Mary Roe Walkup from Richard E. Israel, Assistant Attorney General. Two code counties have made changes under this authority. Queen Anne's County Code § 4-1; Worcester County Code CG § 2-101. In both cases, both the number of commissioners and the manner of their election was altered. However, the authority of the county commissioners over the manner of election is less clear than their authority over the number.

Article VII, § 1 says that the "County Commissioners of each county not governed by Article

---

[1] Because Carroll County is in the Central district, which does not currently have any code counties, it would be easy for the General Assembly to enact laws specific to Carroll County even if it adopted code home rule. Article 25B, § 2(a)(2), Annotated Code of Maryland.

XI-A of this Constitution may be elected by the voters of commissioner districts established therein, or by the voters of the entire county, or by a combination of these methods of election, as provided by the General Assembly by law."[2] While this provision was initially enacted long before Article XI-F, it was amended in 1986, which was when the specific reference to Article XI-A was added. A provision that would have expressly authorized county commissioners in code counties and counties without home rule to establish the method of election of the county commissioners was taken out of the proposed amendment before it passed the General Assembly. *See* Chapter 708 Laws of Maryland 1986. Chapter 708 also added Article XVIII, § 3 to the Constitution. That provision stated that the methods of election of county commissioners authorized by Section 1 of Article VII in effect in each county immediately preceding the effective date of this act shall remain in effect unless changed on or after that date pursuant to this Constitution. These provisions cast some doubt on the ability of county commissioners to legislate with respect to the manner of election. It is my view, however, that the General Assembly could authorize the commissioners in Carroll to establish the districts for commissioners.

In conclusion, it is my view that the county commissioners could set the number of commissioners. However, there is some question as to whether they could set the manner of election, or establish districts for that purpose. If you have any questions, please feel free to call me at 410-946-5600.

Sincerely,

Kathryn M. Rowe
Assistant Attorney General

KMR/kmr
krebs03.wpd

---

[2] In contrast, Article VII, § 2 says that the "number, compensation, and powers and duties of the County Commissioners of each county not governed by Article XI-A of this Constitution shall be such as now are or may be hereafter prescribed by law," without specifying the General Assembly, thus supporting the conclusion that the number is within the control of the boards of county commissioners.